**Tina A. GRAZIANI, Appellee,**

v.

**Eric L. RANDOLPH and Burlington Motor Carriers, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued March 16, 2004.
Filed Aug. 16, 2004.

Susan T. Roberts, Washington, for appellants.

Keith R. McMillen, Aliquippa, for appellee.

BEFORE: KLEIN, BENDER, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Eric L. Randolph and Burlington Motor Carriers, Inc., an Indiana Corporation (collectively, Burlington; individually, Randolph and BMC), appeal the trial court's order dismissing their Motion to Strike Complaint and Strike or Open Default Judgment, their Motion for Demand for Jury Trial, and their Petition for Recusal or Hearing on Recusal. By the same order, the trial court also granted in part Burlington's Motion for Reconsideration, thus permitting Burlington to undertake pre-trial discovery and present expert testimony "provided that their efforts to do so shall not further delay trial . . . ." Order, 7/22/03. They argue that the default judgments are void *ab initio* because Burlington had filed for bankruptcy before Tina A. Graziani filed the complaint underlying this action, and that federal law therefore automatically stayed Graziani's suit, notwithstanding the bankruptcy court's order apparently permitting the continuation of that litigation. We find no merit in Burlington's appeal, thus we affirm.

¶ 2 On November 25, 2000, a commercial tractor-trailer owned by BMC and driven by Randolph allegedly struck Graziani's car in Beaver County, Pennsylvania, causing Graziani severe and permanent injuries. On December 15, 2000, Graziani's counsel informed BMC by letter of Graziani's pending claim arising from the accident. On January 8, 2001, receipt of this letter was acknowledged by Corporate Claims Management, Inc. (CCM), which identified itself as "the third party administrator handling automobile liability claims for" BMC. By this letter, CCM requested that Graziani provide documentation pertaining to the accident in question.

¶ 3 On July 9, 2001, BMC filed a Bankruptcy Petition under Chapter 11 in United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. Graziani received no notice of BMC's bankruptcy filing.

¶ 4 On March 22, 2002, having no knowledge of BMC's bankruptcy petition, Graziani filed a complaint in the Court of Common Pleas of Beaver County, seeking relief against both BMC and Randolph. BMC and Randolph were served with copies of the Complaint. On June 10, 2002, after Randolph and BMC failed to appear or otherwise acknowledge Graziani's complaint, Graziani was awarded default judgments against both parties.

¶ 5 On November 1, 2002, Graziani moved the trial court to schedule a nonjury trial to liquidate the default judgments entered in June 2002. That motion was denied, however, when counsel entered an appearance for both BMC and Randolph and produced a stay order issued by the Bankruptcy Court in connection with BMC's bankruptcy petition.

¶ 6 Settlement-related discussions between the parties ensued, but when these failed to result in agreement, on January 23, 2003, Graziani secured an Agreed Order from the bankruptcy court modifying

the automatic stay effective in connection with BMC's bankruptcy petition. Due to its importance to this litigation, we include below all material portions of that order.

### AGREED ORDER MODIFYING AUTOMATIC STAY

Robert S. Koor, Trustee herein (the "Trustee"), and Tina A. Graziani, ("Plaintiff") herewith agree that the automatic stay in this bankruptcy case arising pursuant to Section 362 of the Bankruptcy Code be modified as specified below, ask the Court to enter this Agreed Order, and in support thereof state as follows:

1. The above-captioned Debtors filed their voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code on July 9, 2001 (the "Petition Date"), and operated their businesses as Debtors–in–Possession until subsequent conversion of their cases.

2. Each of the Debtors' cases was converted to a case under Chapter 7 of the Bankruptcy Code by Order of this Court May 17, 2002.

\* \* \* \*

5. Plaintiff is an individual who has filed a currently pending suit against one or more of the Debtors in The Court of Common Pleas of Beaver County, Pennsylvania under Case No. 10501 of 2002 (the "Pending Action").

6. The Plaintiff's claim in the Pending Action arises from events occurring prior to the Petition Date.

7. The Plaintiff wishes to continue litigation of the Pending Action.

8. The Trustee intends to exercise his discretion pursuant to F.R.P.B. 6009 not to appear or defend in the Pending Action.

9. The Trustee has no objection to the continued litigation of the Pending Action except to the extent that such continued litigation creates a financial burden upon the bankruptcy estates.

10. The Trustee and the Plaintiff hereby agree:

a. that the automatic stay in these cases arising pursuant to Section 362 of the Bankruptcy Code should be modified to permit continued litigation of the Pending Action against the Debtors;

b. that the Plaintiff shall bear all costs and expenses of any discovery demands and of any other demands or requests addressed to the Trustee or the bankruptcy estates; and

c. that the Plaintiff shall pay all such costs and expenses in advance of their incurrence by the bankruptcy estates.

d. That, unless further ordered by this Court, the Plaintiff may enforce any judgment or settlement obtained in the Pending Action or otherwise only, but without further order of court, to the extent of either (a) the Debtors' insurance coverage (including any deposits or bonds securing deductibles) or (b) assets of non-debtors.

Agreed Order Modifying Automatic Stay (hereinafter, "Agreed Order"), filed January 16, 2003. The Honorable Anthony J. Metz, United States Bankruptcy Court, approved the Agreed Order on January 23, 2003.

¶ 7 On February 19, 2003, Graziani again moved the trial court to schedule a nonjury trial to liquidate damages, this time affixing to her motion a copy of the Agreed Order. Burlington did not oppose the motion. The trial court granted Graziani's

request, scheduling the requested non-jury trial for May 5, 2003.

¶ 8 On May 1, 2003, on the eve of the scheduled hearing, Burlington filed the motions that underlie this appeal. These included a Motion for Demand for Jury Trial, a Motion for Reconsideration, a Motion to Strike Complaint and to Strike and/or Open Default Judgments (hereinafter, "Motion to Strike or Open"), and a Petition for Recusal or Alternatively for Hearing on Recusal. By Opinion dated May 19, 2003, the trial court responded to Burlington's petition and motions, granting in part Burlington's Motion for Reconsideration, but denying the balance of Burlington's motions and its petition concerning recusal. The trial court also found, where the language adopted by the bankruptcy court clearly identifies specific pending litigation, and uses language indicating an intent that the referenced litigation should proceed as originally filed, that the plaintiff need not file any new documents, but rather may stand on his or her previously filed complaint. Trial Court Opinion (T.C.O.), 5/19/03, at 5–8, 9.

¶ 9 From this order Randolph and BMC appeal, presenting the following questions for our review:

1. Whether the trial court committed an error of law or abused its discretion in refusing to strike Appellee's Complaint and to strike and/or open the default judgments as to Appellants?

2. Whether the trial court abused its discretion in refusing to grant Appellants' request for a jury trial?

3. Whether the trial court abused its discretion in denying Appellants' Petition for Recusal without an evidentiary hearing?

Brief for Appellant at ix.

¶ 10 At the outset we note that Burlington's brief fails to comply with several aspects of the Rules of Appellate Procedure so as to interfere with our effective review of the questions involved. First, Burlington's Argument contains nine discrete sections that correspond in no clear way to the three questions presented. *See* Pa.R.A.P. 2116(a) (requiring that each assignment of error contained in the Argument be mentioned in the Statement of Questions Involved); Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued ...."). Thus, we take up the Questions Involved as stated by Burlington, addressing those aspects of the Argument that clearly pertain to each question as stated, and decline to reach other aspects of Burlington's argument for failure to include these in the Statement of the Questions Involved. *See* Pa.R.A.P. 2116(a) ("This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.").

¶ 11 With its first question, Burlington argues that the trial court erred in declining to strike Graziani's complaint and consequently in declining to strike or open the default judgments that were entered when Burlington failed to respond to that complaint. Brief for Appellant at 5–18. Burlington argues, relevantly, that the filing of Graziani's complaint violated the automatic stay provision of 11 U.S.C. § 362(a), that this violation rendered the complaint void *ab initio,* Brief for Appellant at 5–7, and that the trial court improperly construed the bankruptcy court's Agreed Order to apply retroactively, thus curing the putative violation of § 362(a). Brief for Appellant at 8–10.

¶ 12 The trial court noted that the Motion to Strike or Open required it first to consider a question novel to Pennsylvania courts: whether, under the automatic

stay provisions contained in 11 U.S.C. § 362, suits filed while a defendant's bankruptcy is pending are void *ab initio* or merely voidable subject to the bankruptcy court's discretion. T.C.O., 5/19/03, at 3. The trial court, after carefully reviewing federal caselaw from several circuits, found that such suits merely are voidable. Thus, the bankruptcy court has discretion to permit such suits to proceed notwithstanding the automatic stay provision of § 362. T.C.O., 5/19/03, at 4–5. We agree.

¶ 13 The effect of an automatic stay under § 362(a) presents a question of law; as such, the scope of our review is plenary. *See Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698, 701 (2002). When we review questions of law, "our standard of review is limited to determining whether the [trial court] committed an error of law." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 746 A.2d 1118, 1120 (Pa.Super.1999) (*en banc*).

¶ 14 Title 11 of the United States Code, concerning bankruptcy, provides for an automatic stay, *inter alia*, of pending litigation against parties in the process of bankruptcy reorganization. Section 362 applies to the instant case, and relevantly provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of -

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

\* \* \* \*

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization
. . . .

11 U.S.C. § 362.

¶ 15 The United States Court of Appeals for the Ninth Circuit has observed that § 362(d) "gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from" an automatic stay under § 362(a). *In re Schwartz*, 954 F.2d 569, 572 (9th Cir.1992). Other courts agree, albeit on a divergent basis, that bankruptcy judges have considerable discretion to grant relief from an automatic

stay on the basis that § 362 merely makes actions against a bankrupt party commenced prior to its bankruptcy filing voidable rather than void *ab initio.* *See, e.g., E. Refractories Co. Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169 (2d Cir. 1998); *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989).

 ¶ 16 Burlington calls our attention to various other circuits where, it contends, courts of appeals have held that a bankruptcy stay renders a complaint filed after the filing of a bankruptcy petition void *ab initio.* Burlington places particular emphasis on decisions of the United States Court of Appeals for the Third Circuit. Brief for Appellant at 7 (citing *In re Siciliano,* 13 F.3d 748 (3d Cir.1994)) (rejecting the trial court's assertion that the law of the Third Circuit reflects a split on the question of voidability); Brief for Appellant at 9 ("As discussed above, the Third Circuit does not follow the voidable approach."). At the outset, we note that "absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved." *Werner v. Plater–Zyberk,* 799 A.2d 776, 782 (Pa.Super.2002). When considering a given issue, however, we prefer Third Circuit decisions to those of other federal circuits, to discourage litigants from 'crossing the street' to obtain a different result in federal court than they would in Pennsylvania court. *See id.* If, however, the Third Circuit has no law on a given question, we may seek guidance in the courts of appeals and district courts in other circuits. *See id.*

¶ 17 Here, Burlington cites several cases in support of its argument that Third Circuit law unequivocally holds that stays under § 362(a) incurably void any pending litigation against the bankrupt party. Brief for Appellant at 6–8. None of these plainly supports the ruling Burlington

seeks from us now. Indeed, to the extent that these cases *suggest* the relief Burlington seeks, the cases are wholly unpersuasive, not to mention equally susceptible of readings favoring Graziani's position. In light of the fact that cases from other federal jurisdictions that are entirely on-point support the ruling in the instant case, we find Burlington's argument unconvincing.

¶ 18 Burlington first cites *Raymark Industries, Inc., v. Lai,* 973 F.2d 1125 (3d Cir.1992), in support of the proposition that, in the Third Circuit, "actions taken in violation of the automatic stay under § 362(a) are null and void *ab initio.*" Brief for Appellant at 6. In that case, while a bankruptcy proceeding was pending in the Eastern District of Pennsylvania, the California Court of Appeals dismissed Raymark's state court appeal of an adverse judgment in a products liability action initiated by Lai for failure to prosecute. *See id.* at 1126–28. The question before the federal court of appeals concerned whether that state appellate court order was void *ab initio* in light of the automatic stay under § 362(a). *See id.* at 1128. The court of appeals noted, in general, that even where the property in question is not properly understood to belong to the estate in bankruptcy—in *Raymark,* the property at issue was a supersedeas bond filed pending appeal of Lai's products liability claim—the automatic stay provision of § 362(a) stays any action against the debtor. *See id.* at 1130.

¶ 19 This superficially unequivocal language, however, does not tell the entire *Raymark* story. In several asides in that decision, the court of appeals noted that under other conditions relief from the "automatic" § 362 stay might be available. *See id.* at 1128 (implicitly observing that Raymark might seek relief from the "automatic stay;" distinguishing *In re Highway*

*Truck Drivers*, 888 F.2d 293, 299 (3d. Cir. 1989), on the basis that the bankruptcy court's grant of relief from the stay rendered the subsequent state court judgment valid and not void *ab initio* ); *cf. id.* at 1130–31 (suggesting that the automatic stay is designed to stop all collection efforts to provide a "breathing spell" for bankrupt parties, but not addressing circumstances where the bankrupt party *consents* to the commencement or continuation of proceedings in other courts during pendency of a bankruptcy petition). The court's contrary decision turned, at least in part, on the fact that Lai had "yet to seek relief from the automatic stay in the bankruptcy court .…" *See id.* at 1128–29. Burlington's resort to *In re Ward*, 837 F.2d 124 (3d Cir.1988) fails for similar reasons. *See id.* at 128 (noting that under § 362(g) the party seeking relief from a § 362(a) stay bears the burden of proof, thus signaling the court's acknowledgment that relief from the latter section's "automatic" stay is available under certain circumstances). The crucial point is that the Third Circuit decisions on which Burlington would rely are inapposite because neither entailed a request for, or a joint agreement to permit, relief from an automatic stay. That fact combined with the Third Circuit's apparent willingness to recognize at least the *possibility* of relief from automatic stays under § 362(d) urges us to look outside the Third Circuit for more apposite cases. *Cf. In re Siciliano*, 13 F.3d 748 (3d Cir.1994) (acknowledging the possibility of relief from an automatic stay under § 362(d)).

¶ 20 The trial court also explored sources outside the Third Circuit, analyzing principally from *Sikes* to conclude that § 362 permits bankruptcy courts to grant relief from automatic stays where the circumstances of a given case warrant such relief. T.C.O., 5/19/03, at 4–10. In *Sikes*, the plaintiffs (Sikes) filed suit against Global for personal injury damages. *See*

881 F.2d at 177. This filing occurred more than a month after Global filed for bankruptcy under Chapter 11. *See id.* Upon learning of the bankruptcy and the consequent § 362(a) automatic stay, and as the limitations period for the claim neared its end, the Sikes sought relief from the stay. *See id.* Global sought dismissal of the Sikes' original complaint on the basis that it was null and void, having been filed under the automatic stay. *See id.* at 178. Global then relented, and its counsel prepared an agreed order, entered by the bankruptcy court, to permit, in the words of the order itself, "personal injury actions that are pending against Global to proceed, allowing discovery to proceed in those actions, and allowing trials to proceed." *Id.* The court required, however, that any attempts to enforce or collect on any consequent judgment be approved by the court. *See id.*

¶ 21 On appeal, the United States Court of Appeals for the Fifth Circuit faced the question "whether the filing of the Sikes['] complaint in violation of the automatic stay is void, in the strict sense of that term, or merely voidable." *Id.* After noting the split in authority as to the status of a complaint filed while an automatic stay under § 362(a) was in effect, the court noted that it was "persuaded that the better reasoned rule characterizes acts taken in violation of the automatic stay as voidable rather than void." *Id.* It based its ruling, in part, on its reading of § 362(d), which grants the bankruptcy court discretion to modify an automatic stay "by terminating, annulling, modifying, or conditioning the stay .…" *Id.* (quoting 11 U.S.C. § 362(d)). Moreover, the bankruptcy court may grant relief from an automatic stay, *inter alia*, "for cause." 11 U.S.C. § 362(d)(1). The court reasoned, as well, from its obligation not to render superfluous other sections of the bankruptcy code where possible.

We find instructive the fact that the Bankruptcy Code specifically protects certain actions taken in violation of the automatic stay. Under section 549 some transactions made in violation of the stay will be deemed valid unless voided at the trustee's discretion. 11 U.S.C. § 549 ("the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case ..."). Section 542(c) ratifies transfers by parties having no knowledge of the bankruptcy case. 11 U.S.C. § 542(c). If everything done post-petition were void in the strict sense of the word, these provisions would either be meaningless or inconsistent with the specific mandate of section 362(a). We reject both alternatives in concluding that filing a complaint in an unknowing violation of the automatic stay is voidable, not void.

*Id.* at 179. Thus, the court of appeals held "that the filing of the Sikes' complaint was a voidable action and that the bankruptcy court had the option to validate it." *Id.* at 180; *see E. Refractories,* 157 F.3d at 172 ("[B]ankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief."). To the extent we find this reasoning persuasive, moreover, we also must find persuasive those courts' conclusions that the bankruptcy court has discretion to grant such relief retroactively. *See Sikes,* 881 F.2d at 179 (noting that while "terminating," as used in § 362(d), contemplates operation only from the date of a terminating order's entry, "an order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay" (quoting COLLIER's BANKRUPTCY MANUAL § 362.06 (3d. ed.1983))); *accord E. Refractories,* 157 F.3d at 172 ("[A]n order "annulling" a stay does have retroactive effect, and thereby reaches back in time to validate proceed-ings or actions that would otherwise be deemed void *ab initio.*").

¶ 22 These cases do not end our inquiry, however, because other federal circuits suggest other interpretations of § 362. The United States Court of Appeals for the Ninth Circuit, for example, held in *Schwartz* that "the *Sikes* ... court[ ] read far too much into the meaning and operation of section 362(d). The power to grant relief, even retroactively, simply does not mean that violations of the stay must be merely voidable rather than void" *ab initio.* 954 F.2d at 573. *Schwartz,* however, reached a *result* that does not materially differ from that reached in *Sikes* and *Eastern Refractories,* at least with regard to this case. Immediately after the above observation, the court observed that "[i]t is entirely consistent to reason that, *absent affirmative relief from the bankruptcy court,* violations of the stay are void." *Id.* (emphasis added). Thus, the court recognized the prospect of affirmative relief, the discretion to fashion which § 362 unequivocally provides the bankruptcy court. *See id.* at 572–73 (noting that § 362(d) "is not inconsistent with the conclusion that any action in violation of the automatic stay is void and of no effect," because subsection (d) "outlines the bankruptcy court's authority to make exceptions to the general operation of the stay."). Thus, "[i]f a creditor obtains retroactive relief under section 362(d), *there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue.*" *Id.* at 573 (emphasis added). Although the underlying reasoning of this case differs from that relied upon in *Sikes* and *Eastern Refractories,* the common thread remains: notwithstanding the automatic operation of a stay under § 362(a), a bankruptcy court has discretion to provide retroactive relief from that stay where in its discretion the circum-

stances require, even, as in *Sikes*, where this means the continuation of litigation against a bankrupt defendant during the pendency of its bankruptcy petition. In some sense, therefore, the question whether a complaint filed unknowingly during the pendency of a bankruptcy petition is void *ab initio* or merely voidable is a red herring—an inquiry that obfuscates the otherwise straightforward operation of § 362(d), since there is little or no dispute among the federal courts that that subsection permits the bankruptcy court discretion to fashion retroactive relief from an automatic stay where circumstances require.

¶ 23 That said, in the interest of ruling as narrowly as possible on questions of federal law, especially given the prospect that the Third Circuit likely will confront this question at some future time, we believe that the reasoning of *Schwartz* should govern in this case. Thus, we decline the invitation to address the controversial question whether a complaint is void *ab initio* versus merely voidable, especially insofar as courts that are determined to preserve the *ab initio* terminology, such as the United States Court of Appeals for the Ninth Circuit, in effect diminish its potency. The greater consensus inheres in the fact that a bankruptcy court has discretion to effectuate, for example, an agreed order permitting pending litigation to proceed notwithstanding § 362(a), where circumstances support that decision.

¶ 24 With this analysis in hand, we next consider the adequacy of the specific Agreed Order in this case to provide retroactive relief to Graziani, thus preserving her complaint and the default judgment that followed. In *Sikes*, the court of appeals found dispositive in favor of preserving the underlying complaint in tort the fact that the bankruptcy court's orders identified the cases in question "by names of the claimants and the names and ad-dresses of claimants' counsel. The court specifically allowed actions to commence *and allowed pending actions to proceed.*" 881 F.2d at 179 (emphasis added). The court concluded that it was "bound to assume, absent clear demonstration to the contrary, that the bankruptcy court was aware of the filing date of the respective complaints. Aware of the filing date of the Sikes complaint, the bankruptcy court permitted it to proceed." *Id.* The court found that the bankruptcy court's "intent [was] clear—it was permitting [pending] claims to proceed to judgment," and declined the defendant-bankrupt's argument that the order merely permitted the Sikes to file a new complaint. *Id.* at 179–80. Thus, the court validated the Sikes' filing, notwithstanding that it had occurred during operation of an automatic stay under § 362(a).

¶ 25 We find that the Agreed Order in this case is equally clear as to the bankruptcy's judge's intent. Thus, it validates Graziani's complaint and does not require that she file a new one to maintain her personal injury claim. Although the Agreed Order does not use as many identifiers as the order in *Sikes* used, it nonetheless identified the plaintiff, Graziani, as one "who has filed a currently pending suit against one or more of the Debtors in The Court of Common Pleas of Beaver County, Pennsylvania under Case No. 10501 of 2002," and defined that suit as the "Pending Action." Agreed Order, 1/16/03. Moreover, the court noted that Graziani's "claim in the Pending Action arises from events occurring prior to the Petition Date." *Id.* It went on to observe Graziani's wish "to continue litigation of the Pending Action." *Id.* It thus noted and approved the agreement of the Trustee of Burlington's estate and Graziani that "the automatic stay in these cases ... should be modified to permit continued litigation of the Pending Action against the Debt-

ors." *Id.* Moreover, the order required Graziani to pay in advance "all costs and expenses of any discovery demands and of any other demands or requests addressed to the Trustee or the bankruptcy estates," and permitted enforcement of "any judgment obtained in the Pending Action . . . only, but without further order of court, to the extent of either (a) the Debtors' insurance coverage . . . or (b) assets of non-debtors." *Id.*

¶ 26 The trial court was led by the above passages to conclude that

> the Bankruptcy Court was aware that Graziani had already filed her Complaint in state court. Therefore, we properly assume that the Bankruptcy Court was aware of and allowed Graziani to proceed with her claim. We decline to accept Burlington's argument that the stay being lifted was not made retroactive and thus Graziani must re-file her complaint.

T.C.O., 5/19/03, at 8. Given our analysis of the underlying validity of the Agreed Order, and in light of the trial court's well-reasoned application of a comparable analysis to the facts at bar, we find no basis on which to overturn its judgment on this question.

¶ 27 Our distinguished colleague dissents from our Opinion in part on the bases that we have disregarded the unduly prejudicial effect of the trial court's actions on Burlington, given Burlington's putative inability to defend under the bankruptcy stay, Concurring and Dissenting Opinion (C.D.O.) at 4–5, and announced "too broad a rule that will likely lead to problems and mischief in future cases." C.D.O. at 1.

¶ 28 We disagree that "the effect upon the debtor defendant," C.D.O. at 4, requires a different result in this case than we reach. The Dissent asserts, without reference to authority, that the defendant "is not allowed to file a response" to a complaint during the pendency of its bank-

ruptcy. C.D.O. at 4. From this, the Dissent concludes that our holding permits Graziani to take undue advantage of a legal incapacity imposed upon a presumably unwitting Burlington. C.D.O. at 6. Even if we accept the narrow proposition that Burlington could not during bankruptcy file a formal answer to Graziani's complaint, *cf. Brown v. Phila. Asbestos Corp.,* 433 Pa.Super. 131, 639 A.2d 1245, 1247 (1994), this does not suggest that Burlington's general and undisputed *silence* as to Graziani's complaint was appropriate or excusable, or is attributable to anything other than neglect. Parties against whom stayed actions have been erroneously filed often file a "suggestion of bankruptcy" with the trial court, thus informing both the court and the adverse litigant of the proceedings and the possibility of a stay. *See generally Com., Dep't of Env. Res. v. Ingram,* 658 A.2d 435 (Pa.Cmwlth.1995). Burlington failed to respond *in any way* to Graziani's complaint, even though it had notice of the pending litigation both before and after filing for bankruptcy. T.C.O., 5/19/03, at 2. Nothing prevented it from directing the trial court's attention to the stay long before entry of the default judgment now before us.

¶ 29 We also find unconvincing the Dissent's assertion that with our holding on this issue we state a rule broad enough to cause future "mischief." Our ruling honors the words of the bankruptcy statute and the courts of appeals' consistent rulings interpreting those words both in the third circuit and elsewhere. Indeed, we expressly rely on the narrow rule stated in *Schwartz, see* 954 F.2d at 573 ("If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue."), which parallels third circuit *dictum* in a related context. *See In re Siciliano,* 13 F.3d at 751 (noting that the bankruptcy

court may grant an annulment of a stay pursuant to § 362(d), which may retroactively validate otherwise stayed actions as "exception[s] to the void *ab initio* rule."). Our ruling is narrowed yet further due to its reliance on the particular circumstances of this case, hinging as it does on the Agreed Order in question.

 ¶ 30 Even so, however, it remains for us to consider whether, given the validity of the initial complaint, the trial court acted properly in denying Burlington's Motions to Strike or Open the default judgment entered on that complaint. The two remedies are not interchangeable, and we often reaffirm the distinction between them.

> A petition to strike a default judgment and a petition to open a default judgment are two distinct remedies, which are generally not interchangeable. A petition to strike a [default] judgment operates as a demurrer to the record. As such it is not a matter calling for the exercise of discretion. A petition to strike a [default] judgment may be granted only where a fatal defect in the judgment appears on the face of the record. A judgment cannot be stricken when the record is self-sustaining.

*U.K. LaSalle, Inc., v. Lawless,* 421 Pa.Super. 496, 618 A.2d 447, 449–50 (1992) (citations omitted).

> The standard of review for challenges to a decision concerning the opening of a default judgment is well settled. A petition to open a default judgment is an appeal to the equitable powers of the court. The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law.

*Dumoff v. Spencer,* 754 A.2d 1280, 1282 (Pa.Super.2000) (internal quotation marks omitted).

¶ 31 The trial court found that the only basis asserted by Burlington in support of its motion to *strike* the default judgment was the stay order automatically effected by BMC's bankruptcy petition. T.C.O., 5/19/03, at 11. Because this "irregularity" was a matter outside the record at the time default judgment was entered, the trial court concluded, Burlington was not entitled to have the default judgment stricken. T.C.O., 5/19/03, at 11.

¶ 32 Burlington contends that this constituted a "very narrow reading of the rules regarding the striking of judgments and limits its analysis to a literal definition of what constitutes a 'defect appearing on the face of the record.'" Brief for Appellant at 16. Its criticism of the trial court's "literal, narrow approach," however, lacks reference to binding authority suggesting that any other approach is appropriate. Burlington then conducts a jurisdictional analysis in support of its argument that the default judgment entered constituted a "continuation" of proceedings in violation of the § 362(a) automatic stay. Brief for Appellant at 16–18. It notes, however, that the default judgments were entered *before* Graziani had notice of BMC's pending bankruptcy petition. Brief for Appellant at 17. Moreover, Burlington fails entirely to address the substantial agreement among federal courts to permit bankruptcy courts, in their discretion, to afford retroactive relief from the automatic stay even as to litigation initiated after the filing of a bankruptcy petition. *See Schwartz,* 954 F.2d at 573 ("If a creditor obtains retroactive relief under section 362(d), *there is no violation of the automatic stay* ...." (emphasis added)). Thus, we conclude that the bankruptcy court's unequivocal grant to Graziani of relief from the automatic stay obviated from the point of its inception any flaw with Graziani's complaint, and thus Burlington has no basis on which

to ground an argument that the default judgment against it should be stricken.

¶ 33 Whether the trial court erred in declining to *open* the default judgment against Burlington is not as easily dispensed with, since "a petition to open a default judgment is an appeal to the equitable powers of the court." *Dumoff,* 754 A.2d at 1282. Our standard of review in this area, however, permits us to reverse the trial court's decision only where we find "a manifest abuse of discretion or an error of law." *Id.* The trial court correctly noted that a trial court may only open a default judgment when "1) the petition has been promptly filed; 2) a meritorious defense can be shown; *and* 3) the failure to appear can be excused." T.C.O., 5/19/03, at 11 (emphasis in original) (citing *Schultz v. Erie Ins. Exch.,* 505 Pa. 90, 477 A.2d 471, 472 (1984)). The trial court observed as well that "in order to secure relief, the petition must have attached thereto a verified copy of the answer which petitioner seeks to file . . . ." T.C.O., 5/19/03, at 11–12 (citing Pa.R.C.P. 237.3(a)-(b)). The trial court found dispositive against Burlington's motion its failure to attach a verified copy of its proposed answer in the underlying litigation.

¶ 34 Burlington fails to address, in its brief, the trial court's ruling on this point by asserting that it did, in fact, attach such an answer, or that it has some excuse for failing to do so either on the equities of this case or in light of governing caselaw permitting us to hear such an excuse. Moreover, Burlington does not dispute that it was properly served with Graziani's complaint and thus was informed of the proceedings against it. In light of the paucity of argument on this point, Burlington simply has failed to provide any basis on which we can find that the trial court abused its discretion in denying Burlington's motion to open the judgment. *See* Pa.R.A.P. 2119. To the extent Burlington

intended its jurisdictional analysis, Brief for Appellant at 16–18, discussed *supra,* to apply to this ruling as well, our rejection of that analysis in the context of a motion to strike the default judgment applies equally in the context of a motion to open. Thus, Burlington is not entitled to relief.

¶ 35 With its second question, Burlington contends that the trial court erred in denying its request to have the trial to liquidate damages decided by a jury. With its third question, Burlington contends that the trial court erred in denying its request that the trial judge recuse himself on the basis that the judge's daughter-in-law is an associate with the firm representing Graziani in this case, notwithstanding that she is not directly involved in the instant litigation. As to both of these issues, Graziani filed on June 11, 2003, a Motion to Quash and/or Dismiss Burlington's Appeal as to all issues except the trial court's ruling on Burlington's Motion to Open or Strike. Burlington filed its Answer to Graziani's motion on June 30, 2003, and by order dated July 17, 2003, this Court denied the motion to quash without prejudice to raise the issue in the briefs or upon oral argument. Burlington has fully addressed this issue with respect to the questions regarding recusal and its request for a jury trial, thus, before reaching the merits, we must consider the propriety of an interlocutory appeal as to these issues under the collateral order doctrine.

¶ 36 Burlington argues that these orders are collateral orders under Pa.R.A.P. 313, and as such are considered final and appealable notwithstanding that such orders do not dispose of all parties or claims. Brief for Appellant at 21–22 (citing *Hanson v. Fed. Signal Corp.,* 451 Pa.Super. 260, 679 A.2d 785 (1996)). We begin with the rule itself.

**Rule 313. Collateral Orders**

(a) **General Rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

(b) **Definition.** ·A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313. The rule sets forth three elements, all of which must be satisfied, to permit our review of an interlocutory appeal under the collateral order ·doctrine. *See Keefer v. Keefer,* 741 A.2d 808, 812 (Pa.Super.1999). The third of these requires the appellant to demonstrate that the underlying claim will be "irreparably lost" should the appellant be forced to forebear from appealing until after final judgment in the litigation. "To satisfy this element, an issue must actually be lost if review is postponed. Orders that make a trial inconvenient for one party or introduce potential inefficiencies, including post-trial appeals of orders and subsequent retrials, are not considered as irreparably lost." *Id.* at 813.

▮ ¶ 37 Burlington would have us rule that concerns about issue preservation require us to hear its appeal now rather than later, because for reasons that are not entirely clear our failure to review the matter now will have the effect of precluding its preservation of the questions for review after completion of the trial to liquidate damages ordered by the trial court. While Burlington cites caselaw for the hornbook proposition that "[a]n appellate court can only pass upon the legal question involved in any case which comes before it," Brief for Appellant at 25 (citing *Commonwealth Dep't of Transp. v. Boros,* 533 Pa. 214, 620 A.2d 1139, 1143 (1993)), it fails to indicate how its right to appeal these rulings after the trial to liquidate damages will be irretrievably lost. Thus, Burlington fails to satisfy Pa.R.A.P. 2119 with regard to this issue and we need proceed no further.

¶ 38 Burlington also appears to argue that we should hear this challenge now because the trial court's order for a trial on damages "forces [Burlington] to participate in a trial without the opportunity to present a defense to Graziani's claims. Appellants are unable to contest liability, enter affirmative defenses, or raise new matter. The trial court's ruling effectively puts Appellants out of court as to the issue of liability." Brief for Appellant at 25. This, however, has little or nothing to do with the questions pertaining to recusal and the right to a trial by jury. Pursuant to Graziani's own jury demand, the initial liability proceeding would have been heard by a jury had Burlington defended. Similarly, Burlington surrendered its right to defend against its liability by disregarding Graziani's suit until after entry of default judgment. This is the nature of default. That default judgment, fundamentally ministerial in nature given Burlington's absence, could not have been a product of any bias on the part of the trial judge; rather it was a function of Burlington's own failure to appear. As for the trial court's decision not to open or strike the default judgments, Burlington has had its opportunity to seek review; the lengthy discussion above provides more than ample evidence of this fact. Thus, we find that Burlington's arguments concerning recusal and its request for a jury trial are interlocutory and not subject to the collateral order doctrine. Thus, we lack authority to review them at this time. As to these matters, Burlington's appeal is quashed.

¶ 39 Finally, there are sections of Burlington's brief that address matters not

raised in its Statement of the Questions Involved. To the extent these sections have appeared to us to bear on the three questions raised, we have considered them; where their relevance has been less apparent, we have declined to do so pursuant to the mandatory requirements of Pa.R.A.P. 2116.

¶ 40 Appeal **QUASHED** in part. Order **AFFIRMED.**

¶ 41 KLEIN, J. files a Concurring and Dissenting Opinion.

CONCURRING AND DISSENTING OPINION BY KLEIN, J.:

¶ 1 While I agree with certain aspects of the majority opinion, I disagree with the analysis and result regarding those issues dealing with the bankruptcy. I believe the majority is announcing too broad a rule that will likely lead to problems and mischief in future cases. Therefore, I must dissent on those points.

¶ 2 I begin by noting that the trial court based its decision, well intentioned though it was, on a central, faulty presumption. The trial court repeatedly stated that if the actions taken by Graziani were declared void, then Graziani would be unable to prosecute her claim due to the expiration of the statute of limitations. The trial court cites *Daniels v. Yellow Cab,* 10 Phila. Co. Rptr. 46 (1983), to support its belief that bankruptcy affords no relief from the statute of limitations. While *Daniels* was decided in 1983, its genesis was well before that date and, importantly, preceded the enactment of 42 Pa.C.S. § 5535, which specifically tolls the statute of limitations where a "civil action or proceeding has been stayed by a court or by statutory prohibition." 42 Pa.C.S. § 5535(b). Thus *Daniels,* in addition to having no precedential value as a Common Pleas Court decision, was overruled by statute. Simply put, there is no problem with the statute of limitations in this matter.

¶ 3 The belief that Graziani would be prevented from proceeding with her claim apparently tinted the trial court's view on whether a bankruptcy renders collateral actions taken pending that bankruptcy void or merely voidable.

> We conclude that to find void an action that has commenced while a bankruptcy order is in effect, particularly when the Plaintiff has no knowledge of the bankruptcy filing, would not be in the interests of justice and would prejudice the Plaintiff in the subsequent state action.

Trial Opinion, 5/19/03, at 5.

> The Court: How could a plaintiff in Pennsylvania know that a bankruptcy petition was filed in some other state and then find out that their lawsuit is now void because of a stay order which they didn't know about and also they were now barred by the statute of limitations? That doesn't make any sense to me at all.

N.T. 5/5/03 at 11.

> The Court: In this case it would [extinguish plaintiff's claim] because the statute has run. It would be effectively extinguished because the statute of limitations has run, isn't that right?

*Id.* at 12.

> The Court: This [extinguishment of the claim] was confirmed by the Superior Court in an unpublished opinion, the case involved Yellow Cab Company. In that case the Plaintiff waited until after the bankruptcy petition, the stay was lifted, then filed their complaint and the judge in Philadelphia found that that did not toll the statute of limitations, they were barred because they knew about it, everybody knew about it in Philadelphia, I guess, and the Superior Court said in an unpublished opinion -
>
> Ms. Roberts (Defense Counsel): Your honor, I'm not familiar with the case you are citing.

The Court: You are now. It's reported at 10 Philadelphia Reporter 46.

*Id.* at 13.

In an effort to protect Graziani's claim, and preserve equity, the trial court determined that actions taken during bankruptcy were voidable. This decision is in opposition to the United States Court of Appeals for the Third Circuit approach, which declares such actions void. *Raymark Industries v. Lai,* 973 F.2d 1125 (3rd Cir.1992).

¶ 4 Interestingly, the Third Circuit has also determined that such actions are merely voidable. *See In re: Siciliano,* 13 F.3d 748 (3rd Cir.1994). If we examine the equitable situation in *Siciliano,* however, we realize that in declaring the action taken during the pendency of the bankruptcy—the sheriff's sale of Siciliano's home, possibly voidable, the court was protecting the interest of the bankrupt party by refusing to allow an action to stand that might prejudice that party.[1]

¶ 5 If we apply the lessons of *Siciliano* to the matter before us, the equities would argue in favor of the debtor, in not allowing an action taken during the bankruptcy stay (the default, especially) that would prejudice the debtor to stand.

¶ 6 From a certain viewpoint, void or voidable is something of a moot question. Given the enactment of section 5535, the statute of limitations is tolled during the pendency of a stay. Thus, for practical purposes, there is little difference if a complaint, filed against a bankrupt defendant during the bankruptcy proceedings, is allowed to stand or is required to be re-filed. Unless a claimant is absolutely asleep at the wheel, there will be no problem in re-filing a complaint. Thus, from the equitable viewpoint of *Graziani,* it does not particularly matter if the filing of the complaint is determined to be void or voidable.

¶ 7 That determination does not and cannot end the investigation. We must also look to the effect upon the debtor/defendant. All parties agree that the general rule is that actions taken during the pendency of a bankruptcy are void. It is also not in dispute that a bankruptcy stay not only affects the actions of a potential plaintiff, but also of the debtor/defendant. Thus, if a plaintiff, unknowingly or not, files an action against a bankrupt defendant, the defendant is not allowed to file a response. The bankrupt defendant should, beyond doubt, inform the plaintiff in a timely manner of the bankruptcy. But, the debtor/defendant should also be secure in the knowledge that if a matter slips through the cracks, the action taken is, per general rule, void. It follows from this that any default taken by the plaintiff would be similarly void. Not only because the original filing is a nullity, but because the debtor/defendant is not allowed to formally answer the petition for default judgment (in the same way it is not allowed to formally answer a complaint).

¶ 8 The main problem I find with the logic of the majority in this matter, is that it ignores the reality that Burlington was not allowed to formally answer the petition for default. The majority then reasons, circularly, that if the filing of the complaint is now deemed valid, then the default is also valid, because the original problem— no validity to the filing of the complaint— has been removed.

---

1. It must be noted that the Third Circuit did not absolutely rule that the actions taken by the mortgagor were either void or voidable, but rather remanded the case for further evidence. The Third Circuit noted that the record indicated that Siciliano actually had no equity in the home sold at sheriff's sale and so would have suffered no prejudice. The Third Circuit also implied that Siciliano was a serial bankruptcy filer, which might indicate an attempt to improperly take advantage of creditors.

¶ 9 That Burlington was not allowed to file an answer is clear. Federal law specifically forbids the continuation of an action such as this while the automatic stay issued by the Bankruptcy Court is in place.

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates to stay, applicable to all entities of:
>
> (1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C.S. § 362(a)(1).

¶ 10 Further, the very definition of a "stay" tells us that no party may take any action in the proceeding that has been stayed.

> Stay, n. 1. The postponement or halting of a proceeding, judgment or the like. *Automatic stay.* Bankruptcy. A bar to all judicial and extra judicial collection efforts against the debtor or the debtor's property. The policy behind the automatic stay, which is effective upon the filing of the bankruptcy petition, is that all actions against the debtor should be halted pending the determination of creditors' rights and the orderly administration of the debtor's assets free from creditor interference.

Black's Law Dictionary 1425 (7th Ed.1999).

¶ 11 In the same manner that the trial court sought to protect the equitable standing of the plaintiff—in effect, sought to prevent Burlington from improperly benefiting from the bankruptcy—we should be equally mindful to prevent the plaintiff from improperly benefiting from the bankruptcy.

¶ 12 The majority finds the intent of the parties was to ratify the filing of the complaint. This finding is based upon the language of the agreed order and *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989). If we accept the notion that the filing of the complaint, otherwise void, may be ratified through specific intent, then such a finding may be supported by the record here. The agreed order, what appears to be a form order, refers to this plaintiff, this particular case and the continuation of the pending litigation. What is not clear from the record is whether the Bankruptcy Trustee and the Bankruptcy Court were ever informed of the default judgment. Without specific proof of that, we risk the violation of the due process rights of Burlington to present a defense on both liability and damages.

¶ 13 In order to ratify the complaint, and thereby defeat the presumption of void actions, the courts require proof of intent to ratify the complaint. In this case, such proof included that the court was aware of the plaintiff's claim and aware of the pending court action. These proofs are found in the Agreed Order, recommended by the Trustee and so ordered by the Bankruptcy Court. Case law cited by the majority, the trial court and Graziani all deal with the ratification of a complaint, not with ratification of any subsequent actions. Thus, case law is not instructive as to what happens to a default judgment taken during the pendency of a bankruptcy stay. It seems clear to me that if the courts require specific proof of intent to ratify a complaint, no less specific proof should be required to strip a defendant of the right to defend. There is no specific proof offered in this case to show that the intent of the parties was to ratify the default judgment. There is no indica-

tion the Trustee was informed of the default judgment and no indication the Bankruptcy Court intended to order the ratification of the default judgment.

¶ 14 This approach appears to be supported by the United States Code, as well.

On a request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay.

11 U.S.C.A. § 362(d). Relief from a bankruptcy stay can, under federal law, take the form of a modification, such as has happened here, or it may annul a stay.

Annulment, n. The act of nullifying or making void.

Black's Law Dictionary 89 (7th Ed.1999).

It is clear that the parties in this matter sought to modify the automatic stay and there is no indication that the stay was annulled. The statute clearly contemplates the power to annul, as well as to modify, a stay. Because the order for modification does not address the issue of the default, the majority's proposed solution resembles the aftermath of an annulment, not a modification.

¶ 15 Because Burlington was prevented by operation of the bankruptcy stay from answering the petition for default judgment, and because there is no proof of intent to ratify the taking of the default

judgment, I believe it is error for our court to announce a rule that would automatically ratify subsequent actions taken during a stay, once the complaint has been deemed valid.

¶ 16 Bad facts make for bad law. Burlington was certainly slipshod in failing to inform Graziani of the bankruptcy in a timely manner.[2] But that failure should not be the basis for a general rule that allows a default judgment taken during a bankruptcy stay to remain in place absent specific proof of intent. I believe the rule as announced can lead to serious abuse by unscrupulous parties and will require the courts to engage in guessing games as to the intent of the parties.[3]

¶ 17 The majority also appears to believe that Burlington should have filed a suggestion of bankruptcy with the court, and thereby implies that Burlington's failure to do so allows for the sanction imposed. The majority cites to *Com., Dep't of Env. Res. v. Ingram*, 658 A.2d 435 (Pa. Cmwlth.1995), in referencing the suggestion of bankruptcy. The Commonwealth Court in that case simply treated the suggestion of bankruptcy as a motion for stay. Technically, federal law has already done that through 11 U.S.C.A. § 362. Whether the trial court is aware of the bankruptcy or not is not at issue under the federal code. The automatic stay provisions of federal bankruptcy law divest the state courts of the ability to take any action in

---

**2.** There may be support for the notion that Burlington ratified the default by failing to promptly seeking to strike that default once the stay was lifted. This determination would require a separate analysis of the ability of a defendant to waive the jurisdictional requirements otherwise at issue in a petition to strike. Further, the majority's reliance on Burlington's *silence* is more of an issue to be contemplated when examining a petition to open or strike in the traditional manner, and does not seem particularly appropriate in examining whether the default is void.

**3.** This case exemplifies the problem. An affidavit from the Trustee indicating there was no intent for retroactive application of the modification of the stay was submitted in the reproduced record, but was not included in the official record. Because it was not officially submitted for our review, the majority rightly does not take it into consideration. One is nonetheless left to wonder if the result in this matter would have been the same if the document had been properly introduced. I mention the statement's existence only to show how difficult it can be to deduce intent.

derogation of the bankruptcy stay.[4] Thus, a suggestion of bankruptcy is more of courtesy. The majority would elevate the filing of a suggestion to a requirement. I can find no support for this notion. While this appeal would never have arisen if Burlington had just operated with a little common sense, that lack of common sense without the violation of any rule does not necessitate the formation of a new procedural requirement.

¶ 18 The problem in assuming intent can be seen by what might happen in this case. The modification of the bankruptcy stay in this case, and in many others, allows the injured party to proceed against the bankrupt defendant only to the extent of insurance coverage. It is well settled in Pennsylvania law that an insurer may disclaim coverage where the insured has taken steps that prejudice the rights of the insurer.[5] It is equally clear that allowing the entry of a default judgment is such an action. *Hargrove v. CNA Insurance Group*, 228 Pa.Super. 336, 323 A.2d 785 (1974). Thus, by ratifying the default judgment, the majority has provided the insurer with an avenue to disclaim coverage, where otherwise it could not. It must be remembered that the modification of

the stay was negotiated between the trustee, Burlington, and the plaintiff. There is no indication that Burlington's insurer had any input at all into the modification. Without insurance coverage, the plaintiff may only collect against Burlington. The problem with this is obvious. Perhaps the plaintiff will collect nothing, since the agreement limits recovery to what might be non-existent insurance coverage. Perhaps the plaintiff has recourse directly against Burlington, but then the automatic stay goes back into effect.

¶ 19 This possibility also supports my belief that the parties and the Bankruptcy Court had no intention of ratifying the default judgment when entering the order modifying the stay. It is difficult to argue the intent of the order was to ratify the default knowing that a disclaimer of coverage was a possibility.[6]

¶ 20 We, as an appellate court, do not and cannot know if the insurer in this case will disclaim. It appears that the insurer would be within its rights to at least attempt disclaimer.[7] Whatever happens, either specifically in this case or in future cases, there seems little reason to provide a rule that conjures up such a nightmare.

---

4. "Also, the Pennsylvania Supreme Court's grant of reargument was rendered in violation of the automatic stay because, *once the petition for bankruptcy was filed, the state court was deprived of the power and jurisdiction* to continue with the appellate proceedings." *In re Highway Truck Drivers & Helpers Local Union # 107*, 888 F.2d 293, n. 9 (3rd Cir.1989). (emphasis added)

5. Obviously, simply allowing a suit to proceed against an insured, but bankrupt defendant, subject to limits of insurance coverage does not represent prejudice, in the legal sense, to the insurer. The insurer is exposed to the possible payment of that which it has contracted for, and that would have been at risk in any event. This differs significantly from being prevented from presenting a defense that might limit liability.

6. This possibility also raises the ironic situation where coverage might be denied and the plaintiff left unable to collect on a possible award when the initial ruling was so clearly aimed at protecting the plaintiff's rights to proceed with the lawsuit. This would prove to be a pyrrhic victory.

7. While the insurer may well have been aware of the personal injury action and been a part of the *"silence"* referenced by the majority, it may well be argued that the subsequent ratification of the default, an action otherwise void under federal law, is an independent act that serves to prejudice the insurer. This argument may or may not be successful, but once again, why even unlock that door, much less open it?

¶ 21 As a result of the above, I believe there are two alternate solutions to this matter. First, one may adopt the general rule that actions taken during the pendency of a bankruptcy stay are void, but may be ratified by specific agreement between the parties. The ratification would apply only to the commencement of an action and would not apply to subsequent actions such as default judgments. This recognizes the fact that a bankruptcy stay applies whether a particular party or court has specific knowledge of the bankruptcy or not. It also recognizes the fact that a default judgment taken during a stay is taken without jurisdiction. Whether it knows of the bankruptcy or not, a trial court cannot enter a default judgment during a bankruptcy stay because it simply does not have jurisdiction at that time.

¶ 22 The second approach, and the approach I favor, is simply to follow the Third Circuit's reasoning in *Raymark* and declare all actions taken during the pendency of the stay void. This has the advantage of unifying the Third Circuit and Pennsylvania law, making the practice more seamless. Given the existence of 42 Pa.C.S. § 5535, it also presents no disadvantage to a prospective plaintiff, allowing a case to be filed past an otherwise expired statute of limitations.[8] This prevents a bankrupt party from taking advantage of its bankruptcy to defeat an otherwise viable claim. This approach also has the virtue of absolute simplicity. It places the parties back at the starting line and allows the action to proceed just as it would have absent the bankruptcy. There is no need to investigate the intent of the parties.

¶ 23 Either solution, however, would prevent the possibility of a party unscrupulously taking advantage of a debtor/defendant's inability to answer a default peti-

tion, or as in the case before us, from an inadvertent advantage being taken. Either solution would also prevent a situation that might allow an insurer to disclaim coverage.

### In re: D.W.

---

8. It should also provide no disadvantage to a plaintiff regarding filing fees. Because the first filing is, in effect void, a plaintiff should be entitled to a refund of the initial filing fee. The payment of the initial filing fee could simply be applied to the subsequent filing.