J-A30002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF DALE L. ANDERSON, SR., ALLEGED INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JEFFREY B. ANDERSON | : : : : : | |
| | : | No. 861 MDA 2019 |

Appeal from the Order Entered April 30, 2019
In the Court of Common Pleas of York County Orphans' Court at No(s):
67-18-2089

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 22, 2020**

Appellant, Jeffrey B. Anderson, appeals *pro se* from the April 30, 2019 Order denying his Petition to Determine Incapacity of Dale Anderson. After careful review, we affirm.

Appellant is the grandson of Dale L. Anderson, Sr. ("Dale Senior").[1] Dale Senior has twelve adult children. In May 2018, Dale Senior executed a power of attorney ("POA") in favor of his daughter, Vickie Anderson ("Vickie").[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Dale Senior, born on September 7, 1931, is now 88 years old.

[2] Vickie had also held the power of attorney for her mother, Dale Senior's wife, prior to her mother's death in 2011.

Around that time, Dale Senior also transferred ownership of the family home to his daughter Michelle Anderson ("Michelle").

Until August 2018, Dale Senior lived with his sons Keith Anderson ("Keith") and Stephen Anderson, in the family home. On August 8, 2018, Dale Senior left the family home with Appellant's father, Dale L. Anderson, Jr. ("Dale Junior") and went to live with Appellant. On November 9, 2018, Dale Senior returned to the family home.[3]

On November 19, 2018, Appellant filed a Petition to Determine Incapacity of Senior, alleging that Dale Senior is totally incapacitated and needs a guardian separate and apart from the POA. Vickie disagreed that Dale Senior was totally incapacitated. Although she conceded that Dale Senior needs assistance handling his affairs, she represented that she was willing and able care for him, and believed that he should remain in his home.

On February 8, 2019, March 28, 2019, and April 29, 2019, the orphans' court held hearings on Appellant's Petition. Appellant, Vickie, and Dale Senior all participated in the hearings represented by counsel. Appellant, Keith, Dale Senior's grandsons Ryan and Jeremy Anderson, and Dr. Faina Caplan, a gerontology expert also testified.

Relevantly, Dr. Caplan testified that after assessing Dale Senior and reviewing the results of a cognitive exam performed by a social worker, she

---

[3] It is not entirely clear from the Notes of Testimony what precise events gave rise to Dale Senior first leaving and then returning to his home three months later, but it is clear that discord and conflict between and among Dale Senior and his children and grandchildren was rampant.

concluded that Dale Senior suffered from numerous chronic conditions including "mixed dementia," and she expects him to continue to decline cognitively. She further testified that he has issues with short-term and long-term memory and should not sign legal documents. She testified that, at the time she examined him, Dale Senior was living with his grandson and seemed pleased with that arrangement. She opined that he seemed easily influenced by others, leaving him vulnerable to fraud or manipulation. She further opined that he cannot independently manage his activities of daily living, including his medical care and finances. She testified that he appeared to be well cared for, well dressed, clean, alert and pleasant.

Vickie testified and presented the testimony of Dale Senior's daughter Michelle; Dr. Ravi Dukkapati, Dale Senior's neurologist; and Attorney Richard H. Mylin, III.[4]

Dale Senior testified on his own behalf, stating that he is happy with Vickie having his power of attorney and with the care she is giving him. He testified that he believes that he can still make some decisions and expressed a desire to stay in his home, but recognized the need for the power of attorney.

Dr. Ravi Dukkapati testified as an expert. He opined that Dale Senior suffers from cognitive impairment, but that the impairment does not affect his overall functioning or impede his ability to handle his affairs. Accordingly, Dr.

---

[4] Attorney Mylin represented Dale Senior in the spring of 2018 to prepare the deed transferring Dale Senior's home to Michelle and to prepare Dale Senior's will.

Dukkapati concluded that Dale Senior is not incapacitated. Notably, Dr. Dukkapati performed a follow-up examination during the pendency of these proceedings on March 4, 2019.

The parties stipulated to the testimony of Delores Hubbard, a York County Area Agency on Aging caseworker.[5] In particular, they stipulated that Ms. Hubbard would testify that she investigated an August 8, 2018 "report of need" regarding Dale Senior. This investigation yielded an unsubstantiated determination, meaning that Ms. Hubbard did not uncover clear and convincing evidence to substantiate the allegations of caretaker neglect or exploitation. She would also testify that she witnessed considerable discord among the various family members who vocalized tremendous disdain for each other through calls and in-person interviews. Last, she would testify that Dale Senior did not reveal any imminent harm, risk, or exploitation as per the Older Adults Protective Services Act 35 P.S. § 10225.303(c).

Following the three-day hearing, the trial court dismissed Appellant's Petition, concluding that Appellant had not proven Dale Senior's incapacity by clear and convincing evidence. This timely appeal followed.

Appellant raises the following issue on appeal:

> Whether Appellant demonstrated by clear and convincing evidence that Dale Anderson, Sr. is an incapacitated person[?]

---

[5] They also stipulated to the testimony of Dale Senior's daughter Bonnie Shaffer pertaining to the circumstances surrounding Dale Senior's execution of the POA in favor of Vickie.

Appellant's Brief at 5.[6]

"Our standard of review is well-settled in cases involving . . . an orphans'

court decision." **In re Estate of Cherwinski**, 856 A.2d 165, 167 (Pa. Super.

2004).  As we have explained:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support.  This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.  In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.  However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

**Id.** (quoting **In re Estate of Schultheis**, 747 A.2d 918, 922 (Pa. Super.

2000)).

Under Pennsylvania law, an incapacitated person is "an adult whose

ability to receive and evaluate information effectively and communicate

---

[6] As a prefatory matter, Appellant's Argument section contains four distinct issues, which do not correspond with, and are not fairly suggested by, the one issue presented in his Statement of Questions Involved as required by Pa.R.A.P. 2116(a).  We need not, and will not, consider any issue that is not contained in Appellant's "Statement of Questions Involved" or that is not fairly suggested thereby.  **Graziani v. Randolph**, 856 A.2d 1212, 1216 (Pa. Super. 2004) (where appellant's argument section contained "nine discrete sections that corresponded in no clear way to the three questions presented," the Court addressed only those aspects of the argument that clearly pertained to each question as stated); Pa.R.A.P. 2116(a) (stating, inter alia, "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501.

A petitioner must prove incapacity by clear and convincing evidence. We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

In support of his claim that the orphans' court erred in concluding that he did not prove Dale Senior's incapacity by clear and convincing evidence, Appellant highlights the testimony of Dr. Caplan and Dale Senior that he asserts was favorable to his position, and impugns Dr. Dukkapati's testimony as uninformed and "superficial at best." Appellant's Brief at 10-14. He suggests, therefore, that the testimony favorable to him proved Dale Senior's incapacity by clear and convincing evidence. **Id.** Appellant's claim is essentially a challenge to the weight of the evidence.

Instantly, the orphans' court explained on the record its reasons for dismissing Appellant's Petition. It noted that it had heard a lot of testimony, and that "a lot of it was contradictory and perhaps just as much of it [was] based on speculation and the respective points of view of the various family members." N.T., 4/29/19 at 97.

The court credited the testimony of both Dr. Caplan and Dr. Dukkapati, but noted that, because Dr. Dukkapati had examined Dale Senior more recently, his observations were "perhaps better founded" than Dr. Caplan's. *Id.*

The court did not credit the testimony of Keith, noting that it "was not impressed with [his] credibility" and found him "somewhat evasive in his answers" and having a "somewhat obvious" bias. *Id.* at 98.

With respect to Appellant, the court found it "not clear from the testimony that [Appellant] lacks an adverse interest to that of [Dale Senior]. *Id.* at 98-99.

The court also made an assessment of Dale Senior's in-court demeanor and comportment, observing that he "was at all times appropriate in his behavior[,] responded to questions appropriately[, and spoke ] to his attorney during the course of the proceedings." *Id.* at 100. The court did "note some deficiencies in his memory and perhaps some understanding as well." *Id.* at 100-01. The court concluded that Dale Senior displayed the ability to provide for his health and safety through his arrangements with his daughters Michelle and Vickie. *Id.* at 99. The court emphasized that Dale Senior "was pretty with it when figuring out his life plan" by transferring the deed to his home to Michelle and in executing a POA in favor of Vickie. *Id.* at 100.

After considering the credibility of the witnesses, including their motives and biases, the court concluded that Appellant failed to prove by clear and convincing evidence that Dale Senior is an incapacitated person. Appellant

essentially asks us to reassess the court's determination of credibility of the witnesses, and to reweigh the testimony and evidence presented at trial. We cannot and will not do so. Accordingly, Appellant's claim does not garner him relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/22/2020