JACOBS, Circuit Judge.
 

 Eastern Refractories Co. Inc. (“Eastern”) appeals from an order of the United States District Court for the Southern District of New York (Conner,
 
 J.)
 
 dismissing Eastern’s lawsuit against Forty Eight Insulations Inc. (“Forty Eight”) pursuant to Federal Rule of Civil Procedure 12(b)(4), on the ground that the suit — commenced without leave after Forty Eight had filed for bankruptcy protection — violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a)(1), and was therefore void. Although the United States Bankruptcy Court for the Northern District of Illinois (Barliant,
 
 B.J.)
 
 had previously granted Eastern limited relief from the automatic stay to pursue its claim against Forty Eight, the district court con-eluded that this relief was not retroactive under Second Circuit law, and Eastern never refiled its action.
 

 On appeal, Eastern argues that the bankruptcy court’s order had retroactive effect and thereby validated Eastern’s otherwise void action against Forty Eight. We agree. Therefore, we vacate the district court’s order and remand the case for further proceedings.
 

 BACKGROUND
 

 In 1981, Eastern contracted to supply insulation to Brown Boveri Corporation (“Brown Boveri”) for use in a power plant. Eastern fulfilled the contract with insulating material manufactured by Forty Eight.
 
 [1]
 
 Brown Bo-veri incurred substantial costs as a result of a March 1983 fire in the power plant that was attributed to the insulation. Brown Boveri invoked the arbitration clause of the contract and won an award of $676,614.92 from Eastern. This award was reduced to judgment in the Southern District of New York, and judgment was entered in the amount of the award plus interest, for a total of $687,088.30.
 

 In February 1986, in connection with Eastern’s satisfaction of that judgment, Brown Boveri assigned to Eastern all of its rights against Forty Eight and others arising from the manufacture, sale and distribution of the defective insulation. Eastern promptly brought suit to pursue those rights. However, ten months prior to the assignment and commencement of suit, Forty Eight had filed for bankruptcy protection in the United States Bankruptcy Court for the Northern District of Illinois. Forty-Eight’s bankruptcy petition, citing principally a multitude of asbestos-related claims, triggered an automatic stay of claims against it pursuant to 11 U.S.C. § 362(a).
 

 Eastern filed its action against Forty Eight and the other defendants in the United States District Court for the Southern District of New York (“the Southern District action”). Three weeks after it filed its initial
 
 *171
 
 complaint, Eastern filed an amended complaint reflecting its having obtained authorization to do business in New York. At the time Eastern filed its complaint and amended complaint, it did not know that Forty Eight was under the protection of the bankruptcy court. When it learned, Eastern postponed serving Forty Eight with a summons or complaint in the Southern District action. (Eastern pursued the action against the other defendants for a time, but each of them was formally dismissed on December 23, 1997.)
 

 On May 29, 1986, Eastern filed a proof of claim in Forty Eight’s bankruptcy proceeding in the Northern District of Illinois, reciting that Eastern had instituted an action against Forty Eight in the Southern District of New York and that the “amended complaint [in the Southern District action] was not served on Debtor, because claimant learned (after it commenced the action) that Debtor had filed a petition under Chapter 11 of Title 11 of United States Code and was afforded the protections of the automatic stay of section 362(a) thereunder.”
 

 Eastern understood that, given the magnitude of asbestos-related claims, Eastern would be able to recover against Forty Eight only to the extent of available insurance coverage. Eastern alleged that its claims against Forty Eight were covered by Bituminous Casualty Corporation Fire & Marine Insurance Company (“Bituminous”). Bituminous disagreed, but provided a defense of Forty Eight subject to a reservation of rights to contest coverage.
 

 On October 24, 1989, Eastern moved in the Illinois bankruptcy court for relief from the automatic stay in order to name Forty Eight as a defendant in another lawsuit, which Eastern had filed in the Northern District of Illinois against a supplier of the adhesive found in Forty Eight’s insulation. (Eastern’s motion did not mention the at-best dormant action in the Southern District of New York.) Forty Eight opposed this motion on the grounds that (i) the estate would be prejudiced by lifting of the stay; (ii) Eastern’s inactivity during the first three and one-half years of the stay implicated the doctrine of laches; and (iii) Eastern’s claim could be resolved in the bankruptcy court. Forty Eight’s response also advised the bankruptcy court about the action in the Southern District of New York. The bankruptcy court denied Eastern’s motion to lift the stay on December 7, 1989, in part to preserve the Bituminous insurance coverage for certain environmental claims also potentially covered by the Bituminous policies.
 

 Eastern renewed its motion to lift the aur tomatic stay in March 1993, this time in order to allow Eastern to pursue its claim against Forty Eight in the Southern District of New York. On April 22, 1993, the bankruptcy court granted a limited lifting of the stay:
 

 The Litigation may proceed to determine the obligation of Forty-Eight to compensate [Eastern] for its claim of contribution. [Eastern] may proceed to collect any judgment obtained or settlement agreed to from Bituminous only to the extent that such judgment or settlement is covered by the Bituminous policies.
 

 This order is without prejudice to Forty-Eight to seek to reinstate the automatic stay in the event (a) there is a determination that Bituminous is not obligated to defend Forty-Eight against [Eastern’s] claim or (b) there are other claims asserted against the Bituminous policies. •
 

 Thereafter, Eastern passed the better part of three years in a fruitless effort to obtain either a written agreement or a declaratory judgment binding Bituminous to cover Forty Eight for Eastern’s claims in the Southern District action. At long last, on March 21, 1996, Eastern moved to reopen the Southern District action, which over seven years earlier had been consigned to the suspense docket. The district court restored the case to the active trial list on March 25, 1996.
 

 On October 15, 1996, Forty Eight moved to dismiss the Southern District action under Fed.R.Civ.P. 12(b). On November 24, 1997, the district court granted that motion pursuant to Rule 12(b)(4) on the ground that it was void
 
 ab initio
 
 because it had been filed in violation of the Bankruptcy Code’s automatic stay provision, 11 U.S.C. § 362(a)(1). The district court’s reasoning is discussed below.
 

 
 *172
 
 DISCUSSION
 

 I
 

 The district court’s opinion turns on section 362(a)(1) of the Bankruptcy Code, which provides that the filing of a bankruptcy petition creates an automatic stay against “the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title.... ” 11 U.S.C. § 362(a)(1). The automatic stay provision is “one of the fundamental debtor protections provided by the bankruptcy laws,” designed to relieve “the financial pressures that drove [debtors] into bankruptcy.” H.R.Rep. No. 95-595, at 340 (1977),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6296-97. It affords debtors a “breathing spell” from the collection process and enables them to attempt a repayment or reorganization plan to satisfy existing debt.
 
 In re Siciliano,
 
 13 F.3d 748, 750 (3d Cir.1994).
 

 The district court relied on our rule that the automatic stay “is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect.”
 
 Rexnord Holdings, Inc. v. Bidermann,
 
 21 F.3d 522, 527 (2d Cir.1994) (citing,
 
 inter alia, In re Fugazy Express, Inc.,
 
 982 F.2d 769, 776 (2d Cir.1992);
 
 In re 18th St. Steakhouse, Inc.,
 
 835 F.2d 427, 431 (2d Cir.1987)). Consequently, the court ruled that Eastern’s “complaint is void and should therefore be dismissed.”
 

 The question presented is whether the Illinois bankruptcy court’s April 1993 order effected a lifting of the stay
 
 nunc pro tunc
 
 so that the Southern District action was no longer void and could proceed.
 

 The Bankruptcy Code empowers bankruptcy courts to take measures that grant relief from the automatic stay, including “terminating, annulling, modifying, or conditioning” the stay, under certain circumstances. 11 U.S.C. § 362(d). These measures have different operation and effect. An order “terminating” an automatic stay operates only from the date of entry of the order.
 
 See In re Albany Partners, Ltd.,
 
 749 F.2d 670, 675 (11th Cir.1984) (quoting 2
 
 Collier’s Bankruptcy Manual
 
 ¶ 362.06 (3d ed.1983)). Such an order thus permits a creditor to re-initiate its lawsuit (or start another one)
 
 after
 
 the termination order is entered but does not affect the status of actions taken between the fifing of the bankruptcy petition and the entry of the termination order — such actions are void
 
 ab initio.
 
 By contrast, an order “annulling” a stay does have retroactive effect, and thereby reaches back in time to validate proceedings or actions that would otherwise be deemed void
 
 ab initio. See Siciliano,
 
 13 F.3d at 751;
 
 Sikes v. Global Marine, Inc.,
 
 881 F.2d 176, 178-79 (5th Cir.1989);
 
 Albany Partners,
 
 749 F.2d at 675; 3
 
 Collier’s Bankruptcy Manual
 
 ¶ 362.07[1] (15th ed.1998). Finally, bankruptcy courts have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief.
 

 The district court held that the bankruptcy court’s April 1993 order had modified the automatic stay to permit the refiling of its action, a step Eastern never took. The district court expressly ruled that the bankruptcy court’s order did not operate
 
 nunc pro tunc
 
 to save the previously-filed Southern District action from voidness
 
 ab initio:
 

 The fact that [the bankruptcy judge] allowed “the [litigation to proceed” does not imply any opinion as to the validity of this action. In fact, his order does not refer to any action in particular.
 

 (Alteration in original.)
 

 II
 

 The April 1993 order of the Illinois bankruptcy court did not recite that it would operate
 
 nunc pro tunc,
 
 no small omission in these circumstances. Nevertheless, we conclude that the bankruptcy court’s order represented a modification
 
 nunc pro tunc
 
 of the automatic stay, retroactively lifting the stay to allow Eastern’s action (filed in 1986) in the Southern District to proceed.
 

 In the order of the Illinois bankruptcy court, the Southern District action is a defined term — called “the Litigation”:
 

 
 *173
 
 In 1986, [Eastern] commenced an action against Forty-Eight in the United States District Court for the Southern District of New York
 
 (the
 
 “Litigation”). In the Litigation, [Eastern] seeks contribution from Forty-Eight for a $702,487.58 judgment paid by [Eastern] to BBC Brown Boveri, Inc.
 

 (Emphasis added.) That defined term unambiguously references and describes the Southern District action in terms of its filing date, the forum, the nature of the claim, and the amount in controversy. (The index number of the Southern District action was supplied in Eastern’s March 1993 motion but did not find its way into the order.) There is no doubt that the intent of the bankruptcy court order was to permit Eastern to proceed with its previously-filed, post-petition lawsuit, and that the “Litigation” referenced in the order is the Southern District action at issue on this appeal:
 

 The Litigation
 
 may proceed to determine the obligation of Forty-Eight to compensate [Eastern] for its claim of contribution. [Eastern] may proceed to collect any judgment obtained or settlement agreed to from Bituminous only to the extent that such judgment or settlement is covered by the Bituminous policies.
 

 (Emphasis added.) The bankruptcy court’s order thus granted Eastern relief from the automatic stay as to that action.
 

 The bankruptcy court did not say whether its order was a partial annulment of the automatic stay (i.e., its relief is limited to a single action rather than all post-petition lawsuits) or a modification of the stay entered
 
 nunc pro tunc;
 
 however, it does not matter. We think it is sufficiently clear that the bankruptcy court granted retroactive relief that permits Eastern to proceed with its Southern District action as if the action had not been void by virtue of the automatic stay in the first place. This modification
 
 nunc pro tunc
 
 of an automatic stay is well within the powers that 11 U.S.C. § 362(d) confers upon bankruptcy courts.
 
 [2]
 

 III
 

 In the alternative, Forty Eight moved to dismiss the Southern District action under Fed.R.Civ.P. 12(b)(5), on the ground that Eastern’s amended complaint was untimely served. Although the Illinois bankruptcy court’s order allowing Eastern to proceed with the Southern District action was filed in April 1993, Eastern did not serve Forty Eight with a copy of the summons and amended complaint until November 1996, when it effected service upon the Illinois Secretary of State. Although the Federal Rules allow a plaintiff 120 days from the filing of the complaint to effect service upon a defendant (after which leave of the court is required),
 
 see
 
 Fed.R.Civ.P. 4(m), the district court did not decide whether Eastern’s service^effected three and one-half years after the entry of the bankruptcy court’s order, and over seven months after the Southern District action was restored to the active trial docket — was timely. Two motions made by Eastern in the district court potentially bear upon this question. The first motion is to extend the time allowed to effect service, pursuant to Fed.R.Civ.P. 4(m). The second is an application that Eastern’s amended complaint be deemed filed
 
 (nunc pro
 
 tunc) as of a date within 120 days of the date service was actually effected.
 

 Because the district court did not reach and decide issues concerning the chronology of filing and service, we do not reach them here. It remains for the district court on remand to determine whether Eastern timely served its amended complaint on Forty Eight, and if not, whether Eastern was entitled to additional time to effect service under Rule 4(m) or to have had its amended complaint be deemed filed
 
 nunc pro tunc.
 

 CONCLUSION
 

 For the aforementioned reasons, we hold that Eastern’s action in the Southern District of New York is not void under the automatic stay provision, 11 U.S.C. § 362(a)(1), and we vacate the district court’s order of dismissal
 
 *174
 
 and remand for further proceedings consistent with this opinion.
 

 [1]
 

 . Forty Eight in turn had used materials manufactured and marketed by defendant Minnesota Mining and Manufacturing Co. ("3M”), distributed by West Side Industrial Supply, Inc., and installed by defendant Aycock, Inc. The fourth defendant, Fibrex Inc., is allegedly Forty Eight’s successor corporation.
 

 [2]
 

 . Whether the Southern District action may be dismissed on some other ground arising from events subsequent to the bankruptcy court’s April 1993 order, we leave for the district court on remand.