20-2187-bk

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2020

(Argued: June 24, 2021     Decided: July 6, 2022)

Docket No. 20-2187

IN RE: EILEEN FOGARTY,

*Debtor.*

BAYVIEW LOAN SERVICING LLC,

*Appellant,*

– v. –

EILEEN FOGARTY,

*Debtor-Appellee,*

R. KENNETH BARNARD, TRUSTEE, UNITED STATES TRUSTEE,

*Trustees-Appellees.**

---

* The Clerk of Court is directed to amend the case caption to conform to the above.

Before:

CARNEY and BIANCO, *Circuit Judges*, and GARAUFIS, *District Judge.*[†]

———————

Debtor-Appellee Eileen Fogarty held a 99% interest in 72 Grandview LLC, which in turn owned a residential property that Fogarty occupied as her primary residence. Appellant Bayview Loan Servicing LLC initiated a foreclosure action in which both 72 Grandview LLC and Fogarty were named as defendants. After Bayview obtained a judgment that authorized it to proceed with a foreclosure sale, Fogarty filed a Chapter 7 bankruptcy petition and notified Bayview that, in her view, proceeding with the foreclosure sale would violate the automatic stay that took effect when she filed her bankruptcy petition. *See* 11 U.S.C. § 362. Nonetheless, Bayview proceeded with the foreclosure sale without relief from the automatic stay from the bankruptcy court.

Fogarty then sought sanctions against Bayview, *see id.* § 362(k), arguing that Bayview willfully violated the automatic stay. The bankruptcy court denied Fogarty's motion, but the district court reversed that decision and remanded for the calculation of fees and other damages that would be charged as sanctions. Bayview now appeals. We hold that two of the Bankruptcy Code's automatic stay provisions, 11 U.S.C. § 362(a)(1) and (a)(2), are violated by an entity that proceeds with the foreclosure sale of a property when the debtor is a named party in the foreclosure proceedings, even if the debtor holds only a possessory interest in the property. Bayview willfully violated the automatic stay when it proceeded with the foreclosure sale while knowing that Fogarty had filed a bankruptcy petition. We therefore affirm the district court's order.

AFFIRMED AND REMANDED.

———————

> JOHN E. BRIGANDI, Knuckles, Komosinski & Manfro, LLP, Upper Saddle River, NJ, *for Bayview Loan Servicing LLC*.

———————

[†] Judge Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation.

HEATH S. BERGER (Brad A. Schlossberg, *on the brief*), Berger, Fischoff, Shumer, Wexler & Goodman, LLP, Syosset, NY, *for Eileen Fogarty*.

CARNEY, *Circuit Judge*:

Debtor-Appellee Eileen Fogarty held a 99% interest in 72 Grandview LLC (the "LLC"), an entity that owned a property (the "Property") that Fogarty occupied as her primary residence. In 2010, the LLC stopped making payments on the Mortgage and Note secured by the Property, leading Appellant Bayview Loan Servicing LLC ("Bayview") in 2011 to initiate a state court foreclosure action (the "Foreclosure Action") as the owner and holder of the Note and Mortgage. Seeking a state court order that would permit the sale, Bayview named both the LLC and Fogarty as defendants in the Foreclosure Action.

In January 2018, Bayview obtained a judgment in the Foreclosure Action, which in effect authorized Bayview to sell the Property under the supervision of a court-appointed referee. The sale was scheduled for April 2018. Four days before the scheduled sale, Fogarty petitioned for bankruptcy in the Eastern District of New York under Chapter 7 of the Bankruptcy Code. On the eve of the sale, her counsel notified Bayview of her petition and her position that proceeding with the sale would violate the automatic stay triggered by her petition. *See* 11 U.S.C. § 362. Bayview promptly countered that, since the LLC alone owned the Property and the LLC had not filed for bankruptcy, no relevant stay was in effect. It then proceeded as scheduled and the Property was sold to a third party.

Fogarty then sought sanctions against Bayview in the bankruptcy court, asserting Bayview's willful violation of the automatic stay. *See id.* § 362(k). The bankruptcy court (Scarcella, *J.*) denied Fogarty's motion, but on appeal the district court (Gershon, *J.*) reversed, finding that because Fogarty was a named defendant in the Foreclosure

3

Action, the sale violated the automatic stay. It further found the violation to be willful because Bayview knew of the petition when it proceeded. It remanded to the bankruptcy court for assessment and award of actual damages and consideration of a punitive damages award. Bayview now appeals.

As a matter of first impression, we hold that two of the Bankruptcy Code's automatic stay provisions, 11 U.S.C. § 362(a)(1) and (a)(2), are violated by the foreclosure sale of a property when the debtor is a named party in the foreclosure proceedings, even if the debtor's direct interest in the property is only possessory. Accordingly, we conclude that Bayview willfully violated the automatic stay when it completed the foreclosure sale while knowing that Fogarty, a named defendant in the Foreclosure Action, had filed a bankruptcy petition. Bayview could and should have sought relief in advance from the bankruptcy court. We AFFIRM the district court's order and we REMAND for further proceedings consistent with this Opinion.

## BACKGROUND

I.      **Factual background**[1]

At all relevant times, Fogarty resided at the Property, a house and land located at 72 Grandview Drive in Shirley, New York. The LLC was the sole owner of the Property, and Fogarty held a 99% interest in the LLC.[2] Bayview was the assignee of the LLC's Note and the Mortgage on the Property. The Note and Mortgage were executed on behalf of the LLC by an individual other than Fogarty. Fogarty was not a guarantor of either the Note or the Mortgage, and the parties agree that she could not be held personally liable for the LLC's debts.

---

[1] The facts bearing on the questions before us are not in dispute.

[2] The record does not reveal who or what entity owned the remaining 1%.

4

In January 2010, the LLC defaulted on the mortgage loan. One year later, in early 2011, Bayview sued the LLC in Suffolk County Supreme Court, in New York, citing the continuing default. In its complaint, Bayview named as defendants the LLC, the New York State Department of Taxation and Finance, and John Does numbered one through fifty, but not Fogarty. Bayview arranged to have the complaint served on Fogarty as the Property's occupant. In October 2014, Bayview requested that Fogarty, as "co-tenant in possession of a portion of the mortgaged premises," be substituted for John Doe #1 as a "party defendant" in the action. App'x at 113. In the same submission, it moved for a default judgment.

Over three years later, in early 2018, the state court issued a Judgment of Foreclosure and Sale (the "Foreclosure Judgment") in favor of Bayview, naming the LLC, Fogarty, and the New York State Department of Taxation and Finance as defendants in the case caption, and setting the general terms of the foreclosure sale.[3] Bayview then scheduled a public auction of the Property for 9:45 a.m. on April 17, 2018 (the "Sale").

On April 13, four days before the scheduled Sale, Fogarty filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of New York.[4] In her Chapter 7 petition, Fogarty stated that she resided at the Property.

On April 16, on the eve of the Sale, counsel for Fogarty contacted counsel for Bayview by phone, and in a confirmation email that evening conveyed his firm's opinion that "pursuant to 11 [U.S.C. §] 362, the automatic stay is in effect" and that "continuation of the [Sale] will be in violation of the stay." App'x at 135. The email

---

[3] The judgment is dated January 22, 2018, but is marked as entered on February 14, 2018.

[4] As mentioned above, Fogarty alone petitioned for bankruptcy protection; the LLC did not file a petition.

further stated that Fogarty would seek "costs, fees and sanctions for such violation of the stay" if the Sale proceeded the next day as planned. *Id.*

Counsel for Bayview responded the next morning, minutes before the scheduled Sale, dismissing Fogarty's warning. He explained his view that, because the LLC is a legal entity distinct from Fogarty, Fogarty's bankruptcy petition "d[id] not stay acts against the LLC or assets of the LLC," such as the Property; thus, the impending Sale of the LLC's property would not violate the stay triggered by Fogarty's personal bankruptcy petition. *Id.* at 137. Bayview's counsel also warned that "any motion for sanctions against my client or my firm will be met with a cross-motion for sanctions against you, your firm and your client." *Id.*

Bayview proceeded with the Sale as scheduled. The Property was sold to a third party. The "Terms of Sale" document, dated April 17, in which the supervising referee set the particulars of the sale, was filed in the bankruptcy court not long after. The document named both the LLC and Fogarty as defendants in the caption. It set the date for delivery of the referee's deed as May 17.

## II.     Procedural history

A few weeks later, on May 11, Fogarty moved for sanctions against Bayview in the bankruptcy court. Invoking 11 U.S.C. § 362(k),[5] she sought actual damages, costs, attorney's fees, and punitive damages based on Bayview's decision to proceed with the sale.[6] Fogarty argued that conducting the sale constituted a willful violation of two of

---

[5] Section 362(k) provides, in pertinent part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

[6] Fogarty also unsuccessfully sought an order from the bankruptcy court vacating the April 17 Sale, but she does not pursue that form of relief on appeal.

the Bankruptcy Code's automatic stay provisions: Section 362(a)(1), involving "the commencement or continuation . . . of a judicial . . . or other action or proceeding against the debtor," and Section 362(a)(2), involving "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under [the Bankruptcy Code]." Bayview opposed the motion and cross-moved for sanctions against Fogarty.

On May 15, the bankruptcy court held oral argument and denied both motions.[7] In a brief written order two weeks later, it emphasized that Fogarty could not be held personally liable for the LLC's default on the Note and Mortgage. In the bankruptcy court's view, the fact of her nonliability rendered the Foreclosure Action an action "solely *in rem*." App'x at 218. Accordingly, Bayview did not violate the automatic stay when it proceeded with the Sale.[8]

Fogarty timely appealed the bankruptcy court's decision to the United States District Court for the Eastern District of New York, and the district court reversed the bankruptcy court's order. It identified two reasons for its ruling. First, because Fogarty was a named defendant in the Foreclosure Action and that action was the basis for the Sale, Bayview violated the stay by proceeding with the Sale. Second, the Sale "significantly lessened the barriers to evicting [Fogarty] from the Property" under New York law. App'x at 87. Thus, it reasoned, the Sale interfered with Fogarty's possessory interest in the Property. Because that interest was part of Fogarty's bankruptcy estate, it was protected by the automatic stay.

---

[7] Bayview does not here challenge the bankruptcy court's denial of its cross-motion for sanctions.

[8] The third-party purchaser subsequently appeared in the bankruptcy court and successfully sought relief from the automatic stay, allowing him to pursue eviction proceedings against Fogarty. Those proceedings resulted in Fogarty's eviction from the Property.

Finally, the district court determined that the stay violation was willful, explaining that the relevant inquiry for that analysis is only whether Bayview intended to take the action that violated the automatic stay. Bayview indisputably intended to do so here, with full knowledge of the bankruptcy filing.[9] Accordingly, the district court held, Fogarty is entitled to actual damages as a sanction against Bayview. It remanded the case to the bankruptcy court to determine the appropriate amount of those damages and also to consider whether punitive damages should be awarded.

Bayview timely appealed.

## DISCUSSION

On appeal from a district court's decision on matters arising from bankruptcy court proceedings, "we independently review the bankruptcy court's decision, accepting the bankruptcy court's factual findings unless they are clearly erroneous and reviewing its conclusions of law *de novo*." *In re DiBattista*, 33 F.4th 698, 702 (2d Cir. 2022).[10] "A bankruptcy court's decision on sanctions is reviewed for abuse of discretion," a standard that is necessarily met by a ruling that rests on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* The correct scope of the Bankruptcy Code's automatic stay provisions presents an issue of law as to which the bankruptcy court's decision is subject to *de novo* review. *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 206 (2d Cir. 2014).[11]

---

[9] On appeal, Bayview does not challenge the district court's conclusion with respect to willfulness.

[10] Unless otherwise noted, in quoting caselaw this Opinion omits all alterations, citations, footnotes, and internal quotation marks.

[11] The parties did not raise any concerns about our appellate jurisdiction in their briefing or at oral argument. Nonetheless, we are "duty bound to examine this issue" *nostra sponte. In re*

On such review, we hold that the Bankruptcy Code's automatic stay provisions relied on by Fogarty, 11 U.S.C. § 362(a)(1) and (a)(2), are violated by the foreclosure sale of a property when the debtor is a named party in the foreclosure proceedings, even if the debtor holds only a possessory interest in the property. Accordingly, we conclude that Bayview willfully violated the automatic stay when it completed the Sale while knowing that Fogarty, a named party in the Foreclosure Action, had filed a bankruptcy petition. Because Bayview willfully violated the automatic stay, Fogarty is entitled to sanctions. *See* 11 U.S.C. § 362(k). In concluding otherwise, the bankruptcy court made

---

*Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir. 1995). District courts have jurisdiction over appeals from the final order of a bankruptcy court, *see* 28 U.S.C. § 158(a), and our court has jurisdiction over appeals of "all final decisions, judgments, orders, and decrees" of the district courts in their consideration of bankruptcy appeals, 28 U.S.C. § 158(d). In general, "[f]inality in the bankruptcy context is determined by a less rigid standard than that applicable to other proceedings." *In re Chateaugay Corp.*, 922 F.2d 86, 90 (2d Cir. 1990). We have recognized, however, that "even in cases where the underlying bankruptcy court decision is final and appealable, the district court's disposition may independently render the matter nonappealable" if it remands for "significant further proceedings" in the bankruptcy court. *Prudential Lines*, 59 F.3d at 331.

Here, there is no question that the bankruptcy court's order denying Fogarty's motion for sanctions was a final order appealable to the district court. As to the finality of the district court's order, our court has not addressed in a precedential opinion whether a district court's order awarding sanctions and remanding for a determination of damages pursuant to Section 362(k) requires "significant further proceedings" in the bankruptcy court. *But see In re DiPietro*, No. 20-3629, 2022 WL 880485, at *1–2 (2d Cir. Mar. 25, 2022) (summary order) (suggesting, in dicta, that a district court's remand on a bankruptcy court's contempt order did not effect a final disposition for purposes of appellate jurisdiction). To the extent that this unresolved issue creates any uncertainty about our appellate jurisdiction under Section 158(d), we need not resolve it in this case because, "as we have repeatedly explained in different statutory contexts, so long as we are satisfied that we have Article III jurisdiction, we have discretion to decline to resolve difficult jurisdictional questions." *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 123 (2d Cir. 2020); *see Butcher v. Wendt*, 975 F.3d 236, 242–44 (2d Cir. 2020) (detailing our court's practice of exercising hypothetical jurisdiction). Here, where there is no doubt that we have Article III jurisdiction, where the statutory jurisdictional issue is novel and not addressed by the parties, and where the merits turn on a straightforward textual analysis, we will exercise our discretion to assume hypothetical jurisdiction and proceed to resolve the appeal on the merits.

9

an error of law, and therefore exceeded the permissible bounds of its discretion. We thus affirm the order of the district court.

## I. Section 362's automatic stay applies to the Sale

The Bankruptcy Code's automatic stay provisions, set forth in Section 362, "protect[] bankruptcy estates by restraining any formal or informal action or legal proceeding that might dissipate estate assets or interfere with the trustee's orderly administration of the estate." *Picard*, 762 F.3d at 207; *see* 3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2022) (describing the automatic stay as "extremely broad in scope" and "appl[ying] to almost any type of formal or informal action taken against the debtor or the property of the [debtor's] estate"). The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove debtors into bankruptcy." *Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). Because "the automatic stay is imposed by Congressional mandate and not by court order," no court action is needed for the stay to become effective. *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992).

### A. Under the plain text of Section 362, the Sale violated the automatic stay

It is undisputed that, under Section 362, Fogarty's bankruptcy filing on April 13, 2018, triggered an automatic stay. And, as Bayview concedes, Fogarty's possessory interest as a tenant of the Property was part of her bankruptcy estate and protected by the automatic stay. *See In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987) ("[A] mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."). Instead, the parties' dispute concerns whether, properly applied, the automatic stay that was triggered by Fogarty's bankruptcy filing should have blocked the Sale.

10

To resolve this dispute, we look first to the plain text of Section 362. *See*

*Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022). As relevant here, under

Section 362(a), the filing of a Chapter 7 bankruptcy petition "operates as a stay" of:

> (1) the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action
> or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title, or
> to recover a claim against the debtor that arose before the
> commencement of the case under this title; [and]
>
> (2) the enforcement, against the debtor or against property of the
> estate, of a judgment obtained before the commencement of the case
> under this title[.]

11 U.S.C. § 362(a)(1)–(2).[12]

Starting with Section 362(a)(1), we agree with Fogarty that the Sale represented a

"continuation . . . of a judicial, administrative, or other action or proceeding against the

debtor." *Id.* § 362(a)(1). Fogarty was a named defendant in the Foreclosure Action.

Section 362(a)(1) provides that actions "against the debtor" or "to recover a claim

against the debtor" are subject to the automatic stay. *Id.* As we have explained, "[t]he

latter category"—to recover a claim against the debtor—"must encompass cases in

which the debtor is not a defendant; it would otherwise be totally duplicative of the

former category and pure surplusage." *Colonial Realty*, 980 F.2d at 131. By contrast, the

former category—actions "against the debtor"—must encompass actions in which the

debtor is a named defendant, as Fogarty was in the Foreclosure Action. As a result, we

can only conclude that the Foreclosure Action was "against the debtor" and therefore

---

[12] Section 362(a) operates as a stay in additional circumstances that the parties have not
raised in their briefing and that we need not address in this Opinion. *See* 11 U.S.C. § 362(a)(3)–
(8). The Code also specifies certain exceptions to the automatic stay. *See id.* § 362(b). These are
not at issue here.

covered by Section 362(a)(1). *Cf. In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983) ("Until the debtor is named as a party-defendant the action does not affect the bankrupt estate.").

The Foreclosure Judgment entered against the LLC and Fogarty set forth the terms and conditions of the Sale, and Fogarty remained a defendant in the Foreclosure Action through the Sale, as the caption on the document entitled "Terms of Sale" correctly reflects. It follows that the Sale amounted to the "continuation" of an action against Fogarty that was commenced before her bankruptcy filing and was subject to the automatic stay established by Section 362(a)(1). *See In re Ebadi*, 448 B.R. 308, 314 (Bankr. E.D.N.Y. 2011) ("Prior to the time Debtor commenced this case, LP had already obtained a Foreclosure Judgment in which Debtor was a named defendant. LP continued the Foreclosure Action by conducting the Foreclosure Sale. This constitutes both a continuation of a judicial action against the debtor and a continuation of a judicial action to recover a claim against the debtor, both violations of the plain language of Section 362(a)(1) of the Code.").

The same conclusion follows with respect to Section 362(a)(2). Because the Foreclosure Judgment against the LLC and Fogarty was entered on February 14, 2018, it was "obtained before the commencement of" Fogarty's bankruptcy proceeding on April 13. 11 U.S.C. § 362(a)(2). The Sale "enforce[d]" a judgment "against the debtor," *id.*, because, through the sale proceedings, the court-appointed referee sold the Property as authorized by the Foreclosure Judgment, and that judgment bound both Fogarty and the LLC as named defendants. Fogarty remained a defendant in that proceeding at least through the Sale. The Sale therefore violated the plain terms of the stay imposed by Section 362(a)(2).

Bayview has not identified any authority—and we are not aware of any—in which a court has found that the automatic stay does *not* apply to a proceeding in which

the debtor is a named defendant. Such an interpretation would cut against the plain text of Sections 362(a)(1) and (a)(2). As the Supreme Court instructs, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *see Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then . . . [the] judicial inquiry is complete."). Here, that language demands a bright-line rule that, so long as the debtor is a named party in a proceeding or action, the automatic stay applies to the continuation of that proceeding, and to the enforcement of, a judgment rendered in that proceeding.

B.      <u>Our interpretation does not implicate the canon against surplusage</u>

Bayview resists this conclusion. It argues that we may not find that the Sale represents *both* a "continuation" of the Foreclosure Action under Section 362(a)(1) and "enforcement" of the Foreclosure Judgment under Section 362(a)(2), contending that such an interpretation would render Section 362(a)(2) superfluous. We find this argument unpersuasive.

When construing the Bankruptcy Code, or indeed any statutory scheme, we must be mindful that "[t]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *City of Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021). But our interpretations of the terms "continuation" and "enforcement" does not render Section 362(a)(2) duplicative of subsection (a)(1) or otherwise superfluous; rather, "every clause and word" of each of the provisions retains meaning under our interpretation. *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

To explain why, we offer a simple example. Consider a scenario in which a creditor obtains a pre-petition judgment in Connecticut, and then, post-petition, seeks to enforce the judgment in New York through a new proceeding. Under our interpretation, the New York enforcement action would not constitute a "continuation . . . of a judicial, administrative, or other action or proceeding against the debtor," so Section 362(a)(1) would not apply. But the hypothetical New York enforcement action would nonetheless fall within the scope of Section 362(a)(2), and so the automatic stay would apply under that provision.

As this example demonstrates, our interpretation does not implicate the canon against surplusage because each subsection of the statute retains independent meaning. To be sure, there may be circumstances in which Section 362's subsections overlap and both apply. An enforcement action may be a "continuation" of a proceeding in some cases, such as this one, where enforcement takes place through the same proceeding that produced the underlying judgment. But the potential for partial overlap does not, on its own, render part of the statutory scheme wholly superfluous. And so, contrary to Bayview's objection, our interpretation is sound notwithstanding the canon Bayview cites. *See Fulton*, 141 S. Ct. at 591. Indeed, a congressional desire for comprehensiveness may lead the drafters of legislation to craft provisions that intentionally overlap to some extent in an attempt to avoid any inadvertent gaps. That some overlap occurs on occasion does not require either striking or ignoring the scheme.[13]

---

[13] In this vein, we note that the Bankruptcy Code offers no indication that Congress intended the automatic stay provisions to be mutually exclusive. To the contrary, several provisions appear, on their face, to create the potential for duplication in particular circumstances. For example, Section 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of" the bankruptcy case. 11 U.S.C. § 362(a)(6). Similarly, Section 362(a)(1) stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding . . . to recover

C. Under Sections 362(a)(1) and (a)(2), Fogarty's precise role in the Foreclosure Action does not matter as long as she was a named defendant

Bayview argues that, even though Fogarty was a named defendant in the Foreclosure Action, the nature of her involvement in the Action means that the automatic stay did not apply to it or to the Sale. Specifically, Bayview presses the view—adopted by the bankruptcy court—that the Foreclosure Action did not violate the automatic stay since it was an *in rem* proceeding and Fogarty was named as a defendant in the action only as an "interested party." Bayview further advances the position that the Sale did not "affect" Fogarty's bankruptcy estate, and that, as a result, the Sale could not have violated the automatic stay whether we look to Section 362(a)(1) or (a)(2). Appellant's Reply Br. at 4.

The argument is fundamentally flawed. Section 362(a) draws no textual distinction between *in rem* and *in personam* proceedings in which the debtor is a named party, nor does it inquire into why the debtor was named as a defendant in an action or proceeding. Rather, under Section 362(a)'s plain text, any action or proceeding "against the debtor" is stayed, regardless of whether the debtor was purportedly named as merely an interested or nominal party or as some other kind of defendant. *Cf. In re Granite Partners, L.P.*, 194 B.R. 318, 335 (Bankr. S.D.N.Y. 1996) (rejecting the argument that a debtor-defendant was "named only for completeness" because "[t]he Bankruptcy Code does not recognize a 'completeness' exception to the automatic stay").

---

a claim against the debtor that arose before the commencement of" the bankruptcy case. *Id.* § 362(a)(1). Although these two provisions may naturally overlap in some circumstances, that overlap likely reflects Congress's well-understood intention for the automatic stay provisions to apply broadly and to ensure that the provisions capture a very wide range of potential actions against bankruptcy debtors and debtors' estates. *See, e.g.*, *Picard*, 762 F.3d at 207; *In re Panayotoff*, 140 B.R. 509, 511 (Bankr. D. Minn. 1992) ("The language of [Section 361(a)(1)] is about as clear as one could reasonably want, and about as broad as Congress could have provided."); 3 *Collier on Bankruptcy* ¶ 362.03.

Bayview relies principally on *In re Ebadi* to support its argument. But *Ebadi* does not establish the rule that Bayview advances. *Ebadi* involved circumstances that bear some similarity to those presented here. The debtor there owned a company that, in turn, owned a property subject to a mortgage. *See* 448 B.R. at 312. The mortgagee obtained a foreclosure judgment on the property; the judgment named both the debtor and the debtor's company. *See id.* The debtor petitioned for bankruptcy mere hours before the foreclosure sale was set to occur. *See id.* It so notified the mortgagee bank, but to no avail: the bank proceeded with the foreclosure sale. *See id.*

The bankruptcy court first determined that the bank's post-petition foreclosure sale violated the automatic stay imposed by Section 362(a)(1). Consistent with our interpretation of the Bankruptcy Code here, the bankruptcy court rested its decision on the ground that the debtor was a named defendant in the foreclosure action. *See id.* at 313.

The bankruptcy court also found that the foreclosure sale violated the automatic stay imposed by a separate provision—Section 362(a)(6)—because the debtor there was a guarantor of the mortgage debt. *Id.* at 314–15.[14] It then rejected the mortgagee's argument that the foreclosure action was permissible despite the stay because it was an *in rem* proceeding. In doing so, the court hazarded in passing that "[a]n *in rem* action against property in which a debtor does not have an ownership interest would likely not run afoul with [sic] the automatic stay," since "such an action would likely be governed by the principle that a creditor can generally pursue non-bankrupt obligors freely." *Id.* at 318. That principle did not apply in *Ebadi,* however, the court wrote, because the debtor both was named as a defendant and guaranteed the mortgage debt.

---

[14] As noted above, Fogarty is not a guarantor of the LLC's debt, and Section 362(a)(6) is not at issue here.

*See id.* The court further emphasized that the reason why the debtor was named in the foreclosure action did not matter to the stay analysis; simply put, because the debtor *had* been named, the foreclosing entity should have sought relief from the stay before proceeding with the sale, or removed the debtor as a party in the foreclosure action. *See id.* By failing to take either step, the foreclosing entity willfully violated the automatic stay. *See id.* at 320.

The holding in *Ebadi* therefore lends no support to Bayview's position in this appeal.

Bayview's contention that the Sale did not violate the stay on the ground that it "did not impact [Fogarty's] estate" also lands wide of the mark. Appellant's Br. at 19. We have long held that, even when the debtor is not a named party in an action, "[i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay." *48th St. Steakhouse*, 835 F.2d at 431; *see Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."). The application of the stay to actions against non-debtors is limited, however, to actions with "an adverse impact on a debtor that occurs by operation of law." *Picard*, 762 F.3d at 208. The automatic stay does not bar "actions taken against third parties that are only factually likely, as opposed to legally certain, to impact estate property." *Id.*

Bayview invokes these precedents in support of its proposition that any effect of the Sale on Fogarty's possessory interest in the Property was "far from a legal certainty," and therefore did not violate the stay. Appellant's Br. at 19. But Bayview's reliance on these precedents is misplaced: each involved actions taken against or ongoing proceedings against only third parties. In *Picard*, for example, the bankruptcy

trustee sought to block "the settlement of three lawsuits, none of which involved [the debtors] as a party." 762 F.3d at 202. In *48th Street Steakhouse*, the debtor—a sublessor—sought to prevent the landlord from taking an action against its sublessee (terminating the sublessee's leasehold). 835 F.2d at 429. And in *Queenie*, we stayed an appeal as it related to the debtor and the debtor's wholly owned corporation, but we allowed the appeal to proceed as to those defendants who were exposed to separate liabilities on the same judgment. 321 F.3d at 287–88 & n.4.

Here, we need not resolve whether the Sale would have a "likely" or a "certain" effect on Fogarty's estate. The inescapable fact is that Fogarty was a named party in the Foreclosure Action. And that fact subjected the Foreclosure Action to the automatic stay regardless of its precise effects, equitable or legal, on her estate, unlike in *Picard* and *48th Street Steakhouse*. Fogarty remained a party to the Foreclosure Action when the Sale occurred, and the Action was not stayed as to Fogarty while continuing against the LLC, in contrast to the appeal in *Queenie*.

To be sure, if Fogarty had been dismissed from the case as a defendant before the Sale occurred, then the situation would perhaps be closer to the scenario presented in *Queenie*, and, as Fogarty appears to recognize, the Sale might not have violated the automatic stay. *See Ebadi*, 448 B.R. at 316 ("The stay violation in this case is predicated on [the foreclosing party's] actions taken in furtherance of the Foreclosure Judgment against, *inter alia*, Debtor himself. Had [the foreclosing party] dismissed Debtor from the Foreclosure Action and removed Debtor from the Foreclosure Judgment prior to the sale going forward, the case would likely have been sufficiently analogous to collecting from a non-filing co-obligor such that [the foreclosing party] would likely not have been stayed from collecting from [the mortgagor]."). But that dismissal did not occur. On the circumstances presented here, where Fogarty remained a named defendant in the Foreclosure Action, the Sale violated the automatic stay.

In short, we reject Bayview's contention that, even if the debtor is a named party, the precise contours of and reasons for the debtor's status in an action or proceeding affect whether the automatic stay imposed by Section 362(a)(1) or (a)(2) applies. Instead, our holding effects a bright-line rule: if the debtor is a named party in a proceeding or action, then the automatic stay imposed by those subsections applies to the continuation of such a proceeding or action, under Section 362(a)(1), and to the enforcement of an earlier judgment in that proceeding or action, under Section 362(a)(2).[15] Fogarty's bankruptcy filing triggered the automatic stay established by Section 362, and Bayview violated that stay when it proceeded with the Sale.

Once the stay was in place, Bayview's recourse, if it wanted to proceed with the Sale, was to follow the Bankruptcy Code's procedures for seeking relief in the bankruptcy court. *See* 11 U.S.C. § 362(d). Bankruptcy courts may "take measures that grant relief from the automatic stay, including 'terminating, annulling, modifying, or conditioning' the stay," and they "have the plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief." *Eastern Refractories*, 157 F.3d at 172 (quoting 11 U.S.C. § 362(d)). A party "is required to move for stay relief if it wishes to enforce its rights against a Debtor protected by the United States Code and the federal bankruptcy laws, and it cannot bypass [the bankruptcy court's] jurisdiction merely because in their opinion cause exists to lift the stay." *In re Dominguez*, 312 B.R. 499, 507 (Bankr. S.D.N.Y. 2004).

Bayview did not seek and obtain relief from the stay. Instead, it simply proceeded with the Sale, despite its knowledge of Fogarty's bankruptcy filing and of

---

[15] In light of this conclusion, we need not resolve the parties' dispute regarding whether the Sale affected Fogarty's possessory interest in the Property under New York Real Property Actions and Proceedings Law.

Fogarty's intention to seek sanctions. Because Bayview willfully violated the automatic stay, Fogarty is entitled to sanctions under Section 362(k).[16] In concluding otherwise, the bankruptcy court relied on an error of law, and therefore exceeded the permissible bounds of its discretion.

## II.    Bayview's remaining arguments are unpersuasive

Bayview presses several additional arguments to counter our straightforward textual interpretation, but its arguments are not convincing.

### A.    The ministerial act exception does not apply

Bayview submits that the Sale was merely a "ministerial act" and that, accordingly, it could not have violated the automatic stay. Appellant's Br. at 19. This argument too is without merit.

The "ministerial act" exception represents an exceedingly narrow category of actions that avoid the automatic stay. As we have explained, "mere ministerial acts performed by the clerk following the completion of the judicial function" are not "the continuation of a judicial proceeding within the meaning of section 362(a)(1)." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 528 (2d Cir. 1994). An example of this type of action would be the "entry of a judgment on the court docket" by a court clerk. *Id.* Similarly, "the delivery of the deed" to a property that has already been sold in foreclosure is properly treated as a "ministerial act" for automatic stay purposes, *In re Rodgers*, 333 F.3d 64, 69 (2d Cir. 2003), as is the "issuance of the writ of possession after

_____

[16] Bayview does not challenge the district court's holding that Bayview's knowledge of Fogarty's bankruptcy petition means that it willfully violated the automatic stay. *See In re Weber*, 719 F.3d 72, 82 (2d Cir. 2013) ("A creditor willfully violates section 362 when it knows of the filing of the petition (and hence of the automatic stay), and has the general intent simply to perform the act found to violate section 362; no specific intent to violate section 362 is necessary."), *abrogated on other grounds by Fulton*, 141 S. Ct. 585.

strict foreclosure," *In re Canney*, 284 F.3d 362, 375 (2d Cir. 2002). In each of these examples, we deemed the act "ministerial" and not barred by the stay because the action with material legal effect had already been reduced to judgment; all that remained to do were minor administrative tasks flowing directly from the judgment. *See In re Soares*, 107 F.3d 969, 974 (1st Cir. 1997) ("A ministerial act is one that is essentially clerical in nature.").

By contrast, under our precedents, a foreclosure sale is not a ministerial act because it affects ownership and possessory interests and requires the exercise of discretion (by the referee in particular). *See Rodgers*, 333 F.3d at 69. For example, in Fogarty's case, her LLC possessed an ownership interest in the Property before the Sale; after the Sale, it did not. Likewise, the Foreclosure Judgment stated that the court "ORDERED, ADJUDGED and DECREED, that the purchaser or purchasers of such foreclosure sale be let into possession on production of the referee's deed or deeds." App'x at 129. Thus, a third-party purchaser gained ownership and possessory rights through the Sale.

Accordingly, we reject Bayview's ministerial act argument.

### B.      Bayview was entitled to seek relief from the stay

As noted above, if Bayview wanted to proceed with the Sale after Fogarty filed her bankruptcy petition, its proper course of action was to seek and obtain relief from the automatic stay pursuant to Section 362(d). That provision empowers the bankruptcy

court to grant relief from a stay "[o]n request of a party in interest and after notice and a hearing."[17] 11 U.S.C. § 362(d).

Bayview responds that this path was illusory: it would not have been allowed to seek relief from the stay, it says, reasoning that it was not Fogarty's direct creditor and therefore, under our 1983 decision in *In re Comcoach*, it would not be considered a qualifying "party in interest" under Section 362(d).

The proper context for Bayview to have pressed this argument was in the bankruptcy court upon requesting relief from the stay, and before proceeding with the Sale.[18] Instead, it went forward with the Sale based on its unilateral (and erroneous) understanding that the stay did not apply to the Sale and that, even if the stay did apply, it was not entitled to seek relief. Bayview's apparent misunderstanding of the law cannot now excuse its failure to seek relief. Nonetheless, because we fault Bayview for not seeking and obtaining such relief, and in light of some confusion associated with our decision in *Comcoach*,[19] we address Bayview's argument and explain why it misunderstands our precedent.

---

[17] Section 362(d) provides, as relevant here:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d)(1).

[18] Not only did Bayview fail to seek relief from the bankruptcy court, but Bayview did not cite *Comcoach* or assert an inability to seek relief in its response to Fogarty's counsel before the Sale, its briefing before the bankruptcy court or the district court, or its opening brief on appeal.

[19] *See, e.g.*, 3 *Collier on Bankruptcy* ¶ 362.07 n.8 (observing that "[l]ower courts in the Second Circuit have struggled with *Comcoach*, and have given a narrow reading, tailored to its facts").

In *Comcoach*, Roslyn Savings Bank initiated foreclosure proceedings against its mortgagor. 698 F.2d at 572. Comcoach was the tenant in possession of the mortgaged premises, but was "neither named as a party-defendant nor served with process" in the foreclosure action. *Id.*

Comcoach filed for bankruptcy. Roslyn then brought a federal court action seeking relief under Section 362(d) that would "enable it to name Comcoach as a party-defendant in the pending state foreclosure action." *Id.* at 573. We concluded that Roslyn was not entitled to seek relief from the stay because it was not a "party in interest" in the bankruptcy proceeding under Section 362(d). *Id.*

Crucial to our conclusion was the fact that, contrary to Roslyn's argument, the state foreclosure action was not subject to the stay triggered by Comcoach's bankruptcy filing: Comcoach was not named as a defendant in that action. *Id.* at 574. "Until the debtor is named as a party-defendant," we explained, "the action does not affect the bankrupt estate." *Id.* Roslyn had no direct claim against Comcoach, the debtor in the relevant bankruptcy proceeding. Instead, Comcoach had a claim against the mortgagor, which in turn had rights against Comcoach as Comcoach's landlord. *See id.* at 572. Roslyn's rights against Comcoach were therefore entirely derivative of the mortgagor's rights. As a result, we concluded that that Roslyn was not a "party in interest" and could not invoke the bankruptcy court's jurisdiction under Section 362(d) to seek relief from the stay. *Id.* at 574. Furthermore, we highlighted that Roslyn would not be left remediless: it could seek appointment of a receiver in the (pending and unstayed) state court action, and the receiver could then step into the shoes of the mortgagor and enforce the mortgagor's rights against Comcoach. *Id.* at 574–75.

*Comcoach* is therefore inapposite here. Unlike the debtor in *Comcoach*, Fogarty was a named party defendant in the state foreclosure proceeding; for the reasons detailed above, the automatic stay applied to the Foreclosure Action. In light of its

position as an opposing party to Fogarty in the Foreclosure Action that was subject to the stay, Bayview is no mere "stranger" to Fogarty's bankruptcy proceeding. *Id.* at 574.[20]

*Comcoach* also includes language which, if divorced from its rightful context in the opinion, could be misunderstood to limit who may seek relief from a stay as a "party in interest" to "either a creditor or a debtor" for the purposes of Section 362(d). *Id.* at 573. But the context is crucial, as courts "have long recognized that the meaning of the term ['party in interest'] must be determined on an *ad hoc* basis." *In re Teligent, Inc.*, 640 F.3d 53, 60 (2d Cir. 2011). *Comcoach* should not be understood to preclude a party subject to a Section 362 stay from seeking relief from the stay in the bankruptcy court.[21]

_____

[20] *Comcoach* is further inapposite in that Bayview would have no recourse if it were not able to seek relief from the stay as a party in interest since the Foreclosure Action is stayed, whereas Roslyn retained a pathway to seek relief under our disposition in *Comcoach*.

[21] Indeed, numerous courts have construed this language from *Comcoach* narrowly in an effort to avoid a "mechanical application" that would "creat[e] 'an anomalous situation where a party is subject to the automatic stay but is unable to seek relief even if damage may result from its continuance.'" *In re Brown Transp. Truckload, Inc.*, 118 B.R. 889, 893 (Bankr. N.D. Ga. 1990) (quoting 2 *Collier on Bankruptcy* ¶ 362.07 (15th ed. 1990)). For example, in *In re Village Rathskeller, Inc.*, the court found that *Comcoach* did not control because "*Comcoach* was driven by two facts which are not present here, first, that the mortgagee was not stayed from foreclosing because the debtor was not a party to the action and, second, that the mortgagee had an available remedy to seek payment of rent from the debtor, appointment of a receiver in the unstayed foreclosure action." 147 B.R. 665, 669 (Bankr. S.D.N.Y. 1992).

Likewise, shortly after *Comcoach* was decided, a district court held that "[s]ince if [the appellant] cannot seek relief from the stay no one can do so on its behalf, we would be reluctant to deny [the appellant] standing as a party in interest unless compelled by the *Comcoach* decision to do so . . . . [W]e feel no such compulsion." *In re Johns-Manville Corp.*, 31 B.R. 965, 972 (S.D.N.Y. 1983). Various courts outside this circuit have also distinguished or criticized the relevant language from *Comcoach*. *See, e.g., In re Bushnell*, 469 B.R. 306, 309 (B.A.P. 8th Cir. 2012); *In re Horton*, 595 B.R. 1, 4 (Bankr. D.D.C. 2019); *In re Sweports, Ltd.*, 476 B.R. 540, 543–44 (Bankr. N.D. Ill. 2012); *In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C. 2008); *In re Schlupp*, No. 05-16879DWS, 2005 WL 2483209, at *4 (Bankr. E.D. Pa. Sept. 2, 2005). These decisions underscore why Bayview could have and should have sought relief from the stay in the bankruptcy court, rather than rely on its view that it would not have been allowed to do so.

Rather, the governing principle to be drawn from *Comcoach* is that, "[t]o the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else." *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007). Here, unlike the mortgagee in *Comcoach*, Bayview seeks to assert its own rights as a party in interest. We are therefore confident that, as a direct adversary of the debtor in an action that was subject to the automatic stay, Bayview would have qualified as a party in interest under Section 362(d). It could have—and should have—sought relief from the automatic stay before proceeding with the Sale.

### C.     Bayview's appeal to equity is unavailing

Finally, in its challenge to the sanctions order, Bayview cites the bankruptcy court's obligation to reach equitable solutions as supportive of that court's denial of sanctions. We should let the bankruptcy court's decision stand, it submits, on the grounds that there is "no compelling interest in applying the automatic stay to a foreclosure sale of property owned by the LLC," Appellant's Br. at 18, and that enforcing the stay in the circumstances presented here "serves no purpose under the Bankruptcy Code," Appellant's Reply Br. at 5.

This argument is misguided. To be sure, it is well established that bankruptcy courts "are courts of equity and apply the principles and rules of equity jurisprudence." *Young v. United States*, 535 U.S. 43, 50 (2002); *see also United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) ("[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships."). But equitable principles do not allow bankruptcy courts—or this court—to contradict the plain text of the automatic stay provisions that Congress enacted. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on

the language of a bill."). Section 362(a) does not incorporate as a consideration whether applying the automatic stay serves a compelling interest or purpose in particular circumstances. Instead, as we have described, it sets a bright-line rule that represents "one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove debtors into bankruptcy." *Eastern Refractories*, 157 F.3d at 172.

We recognize that our holding may be viewed as formalistic. The form, sequence, and timing of the events that occurred here give the reasonable impression that, although her Chapter 7 petition may well have been filed in good faith, Fogarty sought to avoid the already long-delayed effect of the LLC's default on her possessory interest in the Property with her last-minute filing, risking inconvenience and disruption to the court-ordered Sale. But courts and parties alike must respect and follow the procedures that Congress set forth in the Bankruptcy Code. To the extent that the effects of the automatic stay effects may be inequitable, Congress has provided a means of addressing that concern through Section 362(d)'s provision for relief from the stay. *See id.* (Section 362(d) provides bankruptcy courts with "plastic powers to modify or condition an automatic stay so as to fashion the appropriate scope of relief."). Here, Bayview did not avail itself of that means. Accordingly, we must conclude that Bayview violated the automatic stay when it proceeded with the Sale after Fogarty filed her bankruptcy petition.

## CONCLUSION

We have considered all of Bayview's remaining arguments and find in them no basis for reversal. For the reasons set forth above, the July 1, 2020 order of the district court is **AFFIRMED** and the case is **REMANDED** for further proceedings consistent with this Opinion.